Thayer vs. Davis.

THAYER, Respondent, vs. DAVIS, Appellant.

*November 7 — December 3, 1889.*

*Sale of chattels: When title passes: Evidence: Agency: Instructions to jury.*

1. In an action for the purchase price of lumber destroyed by fire, the evidence (showing, among other things, that the prices, terms of payment, and time of shipment had been agreed upon: that the plaintiff and the defendant's agent had identified the precise lumber sold, marking the piles, taking their numbers, counting the courses and estimating the number of feet in each pile; that thereafter the agent had charge of the lumber, a large part of which was loaded and shipped by plaintiff under his direction; and that the portion not so shipped — being the portion destroyed — was covered up by the agent) is *held* to sustain a finding of the jury that there was a complete executed sale, vesting the title in the defendant.

2. The fact that the lumber was to be delivered on the cars, subject to grading and tallying by the defendant's agent, did not prevent the title from passing to the defendant at the time of the sale, if the parties so intended.

3. A conversation between the plaintiff and the defendant's agent was admissible to show that the plaintiff dissented from the view expressed by the defendant in a letter, as to the title to the lumber, the defendant having referred the plaintiff to such agent for information in regard to the matters in dispute between them.

4. Instructions which are not applicable to the evidence are properly refused.

APPEAL from the Circuit Court for *Eau Claire* County.

Action to recover a balance alleged to be due to the plaintiff for lumber sold and delivered to the defendant. The facts will sufficiently appear from the opinion. There was a verdict for the plaintiff, and from the judgment entered thereon the defendant appeals.

For the appellant there was a brief by *L. R. Larson*, attorney, and *H. B. Walmsley*, of counsel, and oral argument by *Mr. Larson*. They cited *Thomas v. Tolford*, 70 Wis. 155; *Randall v. N. W. Tel. Co.* 54 id. 140; *Galloway v.*

*Week*, id. 604; *Lingham v. Eggleston*, 27 Mich. 324; Blackburn on Sales, 22, 23.

For the respondent there was a brief by *L. A. Doolittle*, and *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*.

COLE, C. J.  We do not discover any error in this case which should reverse the judgment. The question in the case is, Does the evidence show a complete executed sale and purchase of the lumber, so as to vest the title in the defendant and make the property his at the time it was destroyed by fire? On the evidence, the jury must have found that this was the nature of the contract, and that the negotiations of the parties did not result in a mere executory contract of sale, as the defendant claims. The evidence as to the actual contract made is the testimony of the parties themselves, and some letters relating to the contract which passed between them. The contract was made between the plaintiff in person and one Bullock, who acted in the transaction as the agent of the defendant. The subject matter of the contract was eleven piles of sawed lumber in the plaintiff's mill-yard at Spencer. The defendant resides in the city of Eau Claire. There was a written memorandum of the terms of the sale made in Bullock's pass-book, which was signed by the plaintiff. This memorandum could not be, or was not, produced on the trial, because Bullock had left the country and taken the pass-book with him. The parties do not fully agree as to the language of this written memorandum or bill of sale.

The plaintiff testified, in substance, that the sale was made on the 9th of November, 1885, between him and Bullock, acting for the defendant. He says he sold on that day eleven piles of shop common lumber, selects and better, estimated to contain 270,000 feet; that the terms of payment and amount of payments were $14 per M. for shop

common and $30 per M. for selects and better; the lumber to be shipped from the yard in two months' time; each shipment to be paid for in sixty days from the time it was shipped. In order to locate and identify the precise lumber sold, the plaintiff and Bullock went to the piles and took the number; all the piles in the yard being numbered at the time. Bullock took the number of the piles down in his pass-book, and counted the courses in each pile. Bullock had charge of the lumber from the time of the sale, and ordered when and where it should be loaded on the cars; the plaintiff having agreed to load it for him. Nine of the piles were shipped, except some shop common, which were laid out by Bullock and stocked up. A portion of the two piles which were left was also shipped, and Bullock covered up what was left. This, in substance, is the version the plaintiff gives of the transaction and of the written contract.

Along in March, 1886, a controversy arose between the parties about the terms of the contract, the time of shipment of the lumber, and time of payment therefor. In one of his letters, written in March, the defendant claimed he was to have sixty days from March 9, 1886, to pay for the remainder of the lumber in the yard, and, in his testimony on the trial, said he did not understand that there was anything in the contract of sale which limited the time of the shipments of lumber. Shipments of lumber were made from time to time, and payments were made by the defendant for such shipments. In August the two piles of lumber not shipped were destroyed. The defendant had seen the written memorandum of the contract in Bullock's pass-book, and testified as to its contents. He made the agreement read differently from the agreement as testified to by the plaintiff.

In this state of the evidence, the trial court submitted the question to the jury, to determine what the real contract was, instructing them as to the difference between an

executed sale which takes effect *in præsenti*, and an agreement to sell which takes effect in the future so far as vesting title is concerned. The court said the plaintiff claimed there was a complete sale. If that were so, and the title became vested in the defendant, the lumber was in the yard at his risk and he must suffer the loss; but if, on the contrary, there was a mere agreement to sell, not to take effect until the lumber was delivered on the cars or at some future time, as the defendant claimed, then the lumber remained the property of the plaintiff and the loss would be his. The court added that the rule of law was, where the intention of the parties was that the title to the property should pass and the property was delivered, that this intention would prevail, though something stipulated in the original contract remained to be done. That is, that where the intention of the parties was to pass the title this intention would control and govern as to the nature of the contract of sale.

Counsel do not essentially differ as to the law applicable to a sale of personal property, nor that, if the contract was that this sale was to be complete and absolute as between the parties, this intention must prevail. Upon the evidence adduced, it was necessary to submit the question to the jury as to the terms of the contract and the intention of the parties as it might be inferred from all the circumstances attending the sale. The case seems to have been fairly submitted for the jury to determine what the facts as to the sale were, and as to the real intention of the parties. The exceptions taken to the charge, we think, are not well taken, and the cause was fairly submitted upon the evidence. If the intention of the parties was that the title of the lumber should pass at once on the sale which was made, there was nothing in the situation of the property or its condition which would defeat that intention. A perfect delivery could be made, and, though the plaintiff was to load the

lumber on the cars when ordered so to do, this would not postpone the vesting of the title in the defendant until such act of loading was performed. This view seems so obviously correct as to require no discussion or argument to support it. There are one or two expressions in the defendant's letters which were in evidence, tending to show that he did not understand that the lumber was his; but there are other expressions which support the opposite conclusion and justify the inference that he understood all the time that the lumber belonged to him and that he was the owner of it. But the letters, with the other evidence as to the sale, were submitted to the jury, and they must have been satisfied that the parties intended that the title to the lumber by the contract should pass to the defendant. This being so, of course the loss was his, and he must pay the contract price for it.

It is further objected that the court erred in the admission of the testimony of the plaintiff as to his conversation with the agent, Bullock. This conversation was had sometime after the sale, and was about an expression in one of the defendant's letters to the plaintiff, which was to the effect that the writer supposed it was understood that the lumber was subject to "your" (the plaintiff's) loss in case of fire. The plaintiff said he made his way to see the agent at the first opportunity, to see what the defendant meant by that remark. He then detailed, under objection, his conversation with the agent, and what Bullock said. The court admitted the evidence of this conversation, to show that the plaintiff dissented from the defendant's view as to who owned the lumber, but held, and so instructed the jury, that any admissions of fact as to what the contract was did not bind his principal (the defendant), and that they could have no such effect given them. Was the evidence objected to admissible for the purpose to which it was limited by the court? We think it was, under the facts disclosed on the

Thayer vs. Davis.

trial.    Bullock was the agent who made the contract on behalf of the defendant, and seems to have had sole charge over the lumber,— gave orders as to its shipment; and, besides, in two of his letters he had told the plaintiff to see Bullock and talk with him on the subject of the contract of sale.    See letter of defendant dated March 16, 1886.[1] Again, in the letter of April 5th, in which this expression was used that the plaintiff desired an explanation of, the defendant says: "Bullock will give you my orders, and will do the scaling and grading as heretofore."    Thus it will be seen that the defendant had referred the plaintiff to Bullock for information in regard to the matters in dispute between them.    It was quite natural, under such circumstances, that the plaintiff should see Bullock, to learn the views of his principal about the sale.    He did see him, and Bullock made the statements he did, which the court held did not bind the defendant as to what the contract was, but were admissible only to show that the plaintiff dissented from the views which the defendant had expressed about the title of the property.    The admissions of a third person are receivable in evidence against the party who has expressly referred another to him for information in regard to an uncertain or disputed matter.    In such cases, the party is bound by the declarations of the person referred to, in the same manner and to the same extent as if they were

[1] The letter dated March 16th is as follows: "DEAR SIR: I thank you for your friendly letter, and regret exceedingly that there should be any misunderstanding between us.    I was not aware that you had signed any contract with Mr. Bullock.    I have referred your letter of above date to him, with the request that he will answer same fully, and send me the contract referred to in your letter.    In the mean time, if you see Mr. Bullock, you might talk with him on the subject.    I desire all my dealings with you, or any one else, to be pleasant, and shall abide in every case by my contract.    We will have to let this matter rest for a few days, and see just what Mr. Bullock has to say on the subject."— REP.

made by himself. 1 Greenl. Ev. § 182. Here the court restricted the statement of Bullock to a very narrow purpose, and there can be no doubt but it was strictly admissible for that purpose.

The court was asked to give an instruction in behalf of the defendant which was refused. The instruction, in substance, was that if the jury should be satisfied from the testimony that, before the amount to be paid for the lumber in question was known, or the quantities of each kind to be paid for could be ascertained, the lumber had to be scaled and graded, and such as would fill the contract selected and accepted and the balance rejected; and, if the jury should further find the time within which such selection and acceptance were to be made had not expired,— then the title had not passed to the defendant, and he was not to sustain the loss by the fire. Whether or not this instruction was sound, as a proposition of law, we need not determine. It was certainly not applicable to the evidence as given on the trial. The undisputed evidence of the plaintiff shows that when the sale was made he and Bullock identified the precise lumber sold; marked the piles and took their numbers; counted the courses and estimated the number of feet in each pile. This tended to prove a sale of those particular piles of lumber. It is true, the defendant testified that, according to his recollection of the written memorandum in Bullock's pass-book, the lumber was to be delivered on the cars at Spencer, subject to the grading and tallying of Bullock; which might be the fact, and still the title to the lumber in the piles marked and selected pass to the buyer, if the parties so intended it should. We think there was no error in refusing to give the instruction.

*By the Court.*—The judgment of the circuit court is affirmed.