COLBURN, Appellant, vs. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Respondent.

*February 8 — February 26, 1901.*

*Practice: Objections to evidence: Purpose: Duty of court to indicate reason for ruling: Contracts: Breach: Damages: Evidence.*

1. The purpose of objections to questions on the examination of a witness is not solely to enable the objecting party to insist on error in the appellate court, but is in part to enable the counsel who is con-

ducting the examination to avoid error and more effectually prove
his case or defense.

2. Where counsel on either side is unable to comprehend the reason for
excluding evidence, and in good faith appeals to the court to indi-
cate specifically such reason in order that he may frame his ques-
tions in such a manner as to meet such ruling, it becomes the duty
of the court to do so.

3. In an action to recover for a failure to leave the surface of a tract
of land in a reasonably smooth condition in accordance with a
contract by which defendant was given the right to remove dirt
therefrom, evidence tending to prove the cost of removing an em-
bankment thereon and filling holes and depressions therein, and
putting the surface in a smooth condition, is *held* to have been im-
properly excluded.

APPEAL from a judgment of the circuit court for Dunn
county: E. W. HELMS, Circuit Judge. *Reversed.*

For the appellant there were briefs by *E. B. & R. E.*
*Bundy*, and oral argument by *R. E. Bundy*.

For the respondent there was a brief by *H. L. Humphrey*
and *Pierce Butler*, attorneys, and *Thomas Wilson*, of counsel,
and oral argument by *Mr. Butler*.

CASSODAY, C. J.  This is an action for damages for the
breach of a written contract under seal, executed and
acknowledged by the plaintiff and the defendant, and duly
witnessed March 14, 1899, wherein and whereby the plaint-
iff, in consideration of $250, to him in hand paid, granted,
licensed, and permitted the defendant, its agents, contract-
ors, and employees, to enter upon the S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$
of section 31, township 29 N., of range 14 W., in Dunn
county, and excavate and remove therefrom all the earth
and material from a strip of land 250 feet in width and
1,000 feet in length adjoining the right of way of the de-
fendant on the north, and extending east 1,000 feet from the
west line of the forty-acre tract, described; and it was there-
in mutually understood that the plaintiff only granted to the
defendant the right to remove earth from the strip of land

described, and that such excavation should not be made below the level of ten feet below the railway track, and that the surface should be left in a reasonably smooth condition.

The complaint, among other things, alleges that the plaintiff had performed each and every condition on his part agreed to be performed by such written contract; that the defendant under and by virtue thereof entered upon the land, and excavated and removed dirt therefrom; that the new line of railway referred to had been completed, and the defendant had ceased to excavate from such land, and had stopped all work thereon and had removed therefrom; that the defendant had failed and neglected to perform the terms and conditions of the contract on its part to be performed, in this: that it had failed and neglected to leave the surface of the land where it had been so excavated in a reasonably smooth condition, but, on the contrary, left the surface in a very rough, uneven, and unsightly condition, and thereby greatly injured the land and the farm of the plaintiff adjoining the land and of which such land was a part; and claimed damages in the sum of $300.

The defendant answered, by way of admissions, denials, and counter allegations, to the effect that it had excavated and removed, from the land therein described, certain earth and material for the construction and improvement of its railroad; that the work referred to in the contract had been completed; that it had ceased to excavate from the land, and had stopped all work thereon; that it had left the surface of the land where it so excavated in a reasonably smooth condition.

At the close of the testimony, the jury, by direction of the court, returned a verdict in favor of the defendant. From a judgment entered thereon, the plaintiff brings this appeal.

The contract gave the defendant the right to "excavate and remove therefrom all the earth and material from" the

strip of land described, being 1,000 feet in length, east and west, and adjoining the defendant's right of way on the north, and being 250 feet in width, and the defendant therein agreed that such excavation should not extend more than ten feet below the defendant's railway track, and that the surface should "be left in a reasonably smooth condition." It stands confessed that the surface was not left in a reasonably smooth condition. On the contrary, it is admitted that a heavy and abrupt ridge ran along near the south side of the strip of land described, sloping more or less towards the north, and then rising more or less abruptly, and in some places nearly, if not quite, perpendicularly. Thus, it is in evidence that, at a cross section 740 feet from the west end of the strip, the bank rose abruptly from the comparative level to the height of twenty-one and one-half feet, and then sloped downward towards the north to ten feet and four inches above such level, and then rose almost perpendicularly to the height of forty-one feet and ten inches above such level. At another cross section 440 feet from the west end, the bank rose abruptly, and almost perpendicularly, from the comparative level to the height of sixteen and one-half feet, and then continued to rise quite sharply to the height of twenty-three feet and four inches above such level, and then descended abruptly to the north between four and five feet, and then, after going several feet at substantially the same height, it rose quite abruptly to the height of forty-one feet and three inches above such level. There are two other cross sections, one 270 feet from the west end and the other sixty feet from the west end, each of which presents quite an irregular surface, but not nearly as irregular and abrupt as the two described. These cross sections were taken from average points, neither the worst nor the best, and show the general contour of the surface, from the comparative level near the defendant's track towards the north,— not the uneven little small rolls of

Colburn vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

ground, but the general contour. Such being the admitted conditions of the strip of land in question, located on the plaintiff's farm, it is difficult to perceive how the court could hold, as a matter of law, that the plaintiff had sustained no damage by reason of the breach of the defendant's agreement to leave the surface in a reasonably smooth condition.

But the case does not turn upon such ruling. The plaintiff had, as a witness, the county surveyor, who had followed surveying as a business,— an expert engineer, who had carefully examined the premises and made the measurements mentioned, and who had twenty years' experience as railroad contractor, mining surveyor, street commissioner, and otherwise, in removing and leveling dirt, removing embankments, and leveling or smoothing embankments of dirt, and who testified that he could make an estimate of the cost of putting this bank in any condition of smoothness that he had in mind; that he had made an estimate in regard to this land; that he figured on the cost of the removal of the bank between the track and the main bank, to make a slope of thirty-five feet to the hundred, and then, after going back a certain distance, cutting off the one bank so as to show such slope; that from his experience he was capable of making a correct estimate of the actual cost of removing the dirt and making such grade; that he took into consideration the cutting of the bank and filling in both ways, so as to have a slope of thirty-five feet to the hundred; that he knew what it was worth per yard to remove that soil,— cutting and filling as mentioned. The plaintiff's counsel put to such expert witness numerous questions, which were mostly excluded by the court. A few of them only will here be considered. Among the questions so excluded were questions to the effect: What, in your judgment, would be the cost of taking from this southern bank enough to make the grade there rise thirty-five feet in the hundred?

What, in your judgment, would it cost to place this land in such a condition of smoothness that a person with a team and farming tools could get onto it and drive over it? What, in your judgment, would be the cost of making that cut and the change so mentioned in your testimony? What is the cheapest way that the land could be put into such a condition that a person could drive onto it and over it? What is it worth per yard to remove the soil, cutting, and filling to construct a slope of thirty-five feet to the hundred? What would it cost per yard to make this cut and do this filling along the south bank, as you have described? What would be the cost per yard of making this cut off of the top of this second embankment in the manner you have stated, and of which you have made an estimate? What would be the cost per yard of removing this second embankment or cutting it in the manner you have stated? Do you know what it would cost per yard to remove or cut that embankment in the manner you have stated? Do you know what would be the easiest and most economical way of placing this piece of land over which this cut extends in such a condition that any use could be made of it? How much earth would have to be removed in order to put this piece of land in such a condition that it could be used for any purpose? Some of such questions were, in substance, repeated on the supposition of a slope of fifty feet to the hundred, and also twenty feet to the hundred, but were excluded. The only objection made to most of these questions was that they were incompetent, irrelevant, and immaterial. When such objection was made to one of such questions, counsel for the plaintiff requested the defendant's counsel to state more specifically the "grounds of his objection." The defendant's counsel then said that he thought the objection as stated was sufficient to protect the rights of the defendant, and the objection was sustained.

It should be remembered that the object of making ob-

jections is not for the sole purpose of enabling the objecting party to insist on error in the appellate court, but that one of the objects is to enable the counsel putting the questions to avoid error and more effectually prove his case or defense. We think the defendant's counsel should have been required to make more specific objections, if he had any; or, at least, have been required to state the theory upon which he regarded such questions objectionable. Upon sustaining one of such objections, counsel for the plaintiff appealed to the court to indicate specifically and in such manner " the ground and reason of sustaining the objection," that he might " form questions to meet the court's rulings." But the only response of the court was that " the objection goes to the foundation; if you will think about this matter a while, and think about putting in expert testimony on this question, I think you will see," — to which statement and ruling the plaintiff duly excepted. We cannot sanction such a response of the court to such an appeal. True, counsel of the respective parties are expected to try their own side of the case, without the aid of the court. But when counsel on either side is unable to comprehend the ground or reason for excluding evidence, and in good faith appeals to the court to specifically indicate such ground and reason in order that he may frame his questions in such a manner as to meet such ruling, then, in our judgment, it becomes the duty of the court to indicate such ground or reason specifically. While a trial judge is not expected to become a partisan, yet he must preside and administer the law in such a way, as far as possible, as to secure the enforcement of justice. That, in our judgment, was not done in this case. While some of the questions mentioned, and several of those referred to, may be objectionable in form or substance, yet we must hold that evidence tending to prove the cost and expense of removing such embankment, and filling in holes and depressions, and putting the surface in a smooth con-

Brown vs. Chicago & Northwestern R. Co.

dition was improperly excluded.  Of course, it is for the jury to finally determine what is " a reasonably smooth condition," within the meaning of the contract.  But the evidence of the respective parties may be based upon different theories, slopes, and methods, each of which may have more or less bearing upon the question to be thus ultimately determined by the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.