Goodwin, Plaintiff in error, vs. The State, Defendant in error.

*April 7—April 22, 1902.*

*Assault by husband upon wife: Wife may swear to complaint: Evidence: Credibility of witnesses: Medical examination: Leading questions: Curing error: Admissions: Instructions to jury.*

1. The complaint against a husband for an assault upon his wife may be sworn to by her.
2. After a witness has completed her testimony and left the stand, the court has no power to require her to submit to a medical examination to determine whether she is afflicted with hysteria, as a basis for evidence bearing upon her credibility, accuracy of memory, etc.
3. The exclusion, as leading, of questions limiting the subjects of conversations called for, and the further exclusion, as too general, of questions not so limited, is *held* error.
4. After such confusing rulings, counsel was entitled, upon request, to have the court suggest what questions might be asked.
5. The fact of a woman's illegitimate pregnancy, or of her making a complaint for bastardy, is not admissible as bearing on her credibility as a witness.
6. After questions as to such facts had been permitted on cross-examination, and the witness had answered them, a mere remark of counsel that the questions were withdrawn did not cure the error.
7. Defendant was accused of throwing his wife into a well about fifteen rods distant from his house, and sought to show that he was in the house at the time in question. There was evidence that all the family except defendant had gone to bed, and tending to show that all other persons who had been in the saloon in the lower part of the house had left. A servant testified that from her room she had heard defendant bring an in-

toxicated man upstairs and put him to bed, recognizing defend-
ant by his voice. *Held*, that her further testimony as to the
sounds she heard of his steps in passing downstairs, the clink-
ing of glasses, the winding of the clock, and finally the arrival
of the persons who had heard the outcry of the wife in the well,
should not have been excluded on the ground that it was not
certain that there was no one other than defendant in the rooms
below, but that question should have been left to the jury.

8. After the wife had been rescued from the well her brother, in
effect, charged defendant with putting her there, and he replied
in substance that she could not prove it, or that he would give
her brother a chance to prove it. *Held*, that this was not an
admission of guilt or of any fact, and that a charge to the jury
conveying to them the impression that it might be so construed
was erroneous.

Error to review a judgment of the circuit court for Dodge
county: James J. Dick, Circuit Judge. *Reversed.*

Plaintiff in error was charged with assault with intent to
kill his wife, Mary Goodwin, on May 29, 1900. The evidence
for the prosecution was to the effect that some time between
10 and 11 o'clock of that evening, after the customers at his
saloon had all gone and the family had all retired to bed, de-
fendant induced his wife to arise and go with him, ostensibly
to hold a lantern while he treated a sick horse; that he there-
upon took her some fifteen rods to a seldom-used shed or
stable, and cast her into a well, from which she was rescued
by reason of her cries being heard by people passing in the
street. The defense rested upon evidence tending to show the
whereabouts of the defendant at all periods between 10 and
11 o'clock, and up to the time when the alarm was brought to
him, and he confessedly went with others to the rescue of his
wife; the theory of the defense being that the wife, being, if
not insane, in a highly disturbed and hysteric mental condi-
tion, had either wandered to the region of this well and fallen
in, or had attempted suicide. When the wife was raised from
the well, and while being supported by her brother on one
side and her husband on the other, her brother inquired how

she got there, and she replied that her husband had put her in. Thereupon the brother said to defendant that it looked pretty serious, implying a charge of guilt against him, and he replied, with an oath, either, "She can't prove it," or, "I will give you a chance to prove it."

A plea in abatement was interposed, based upon the contention that there had been no legal preliminary examination, because the complaint before the justice of the peace was sworn to by Mary Goodwin while still the wife of the accused. Much evidence was offered of the wife's disturbed mental or nervous condition and of strained and unpleasant relations between them. The plea in abatement was overruled and exception taken, and upon the trial a verdict of "Guilty" was found, and, after motions to set aside the same and for a new trial, judgment and sentence were pronounced, to which plaintiff in error sued out the present writ.

*M. E. Burke*, attorney, and *H. W. Chynoweth*, of counsel, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *M. L. Lueck*, district attorney, and oral argument by *R. F. Hamilton*, second assistant attorney general.

Dodge, J. 1. An error assigned upon overruling the plea in abatement, for that the defendant's preliminary examination was had upon the complaint sworn to by his wife, cannot be sustained. From early times the law has recognized the necessity of accepting the wife's testimony to prove personal assaults upon her by the husband, as an exception to the general rule excluding the wife from testifying for or against her husband. *Mills v. U. S.* 1 Pin. 73, 74; *Stein v. Bowman*, 13 Pet. 209, 221; *People v. Northrup*, 50 Barb. 147, 156; *Comm. v. Sapp*, 90 Ky. 580, 14 S. W. 834.

2. Error is assigned because, after the complaining witness had testified, her cross-examination had been completed, and

she had left the stand, on the following day the defendant asked the court, in the exercise of its discretion, to require the complaining witness to submit to an examination to determine whether or not she is afflicted with hysteria. This the court refused, saying that he was satisfied of the competency of the witness, both by previous observation and by her manner of testifying. Counsel responded that they desired it as a basis for evidence bearing upon her credibility, accuracy of memory, etc. In this ruling we discover no error. Counsel cites us no case, and we confidently believe there is no authority, to support the power of a court, after a witness has completed her testimony and left the stand, to compel her to submit to a medical examination, physical or mental. It would be such · an invasion of the rights of personal liberty that arguments far more cogent than any suggested would be necessary to convince us of the existence of such power. Counsel refers to cases where the power of the court to compel examination of parties, more especially in personal injury cases, has been declared. That, of course, stands on an entirely different ground. There the party is seeking a remedy from the court, and, if there is any reason to believe that the facts would be better disclosed by an examination, the court has power, in its discretion, not so much to compel the examination, but to make it a condition of further entertaining the prayer for relief. Nor should we doubt that in a proper case, where the court was seriously doubtful of the mental competency of a proposed witness, he might impose a medical examination as a condition of allowing the witness to testify, to which she might refuse to submit. But the step requested in this case demanded such control as the court could not exercise over a person not a party to the proceeding, and was properly denied.

3. Error is assigned upon the rulings and remarks of the court with reference to examination of a witness, Tillie Sonnenberg, who was formerly a domestic servant in the family

of the plaintiff in error. The following is a condensation of what transpired, as appears by the record:

"*Q.* Did you ever hear Mrs. Mary Goodwin make any threats? (Objected to as leading.) *By the court:* What, if anything, did you hear Mrs. Goodwin say to *Mr. Goodwin? Q.* Did you ever see her with a butcher knife in her hand? (Objected to.) *By the court:* It is most certainly directing her attention directly. *Q.* What, if anything further, did you see Mrs. Goodwin do, or hear, while you were there? *By the court:* Limit it. I can't have the general conversation. (Exception.) *Q.* Anything in the line of threats or otherwise? *By the court:* I won't permit any further suggestion in the line of the answers you want."

After some further questions were held leading, counsel for defendant said: "I would like to have the court suggest— *By the court:* We are not running a kindergarten." Clearly the court was too restrictive. It was apparent that the testimony was preliminary to the relation of threats and of conduct involving the use of a butcher knife, and the mere inquiry whether there were any such occasions was in no wise prejudicial; but, further than this, when the counsel, in deference to the court's rulings, attempted to make his question general, he was promptly restrained from that course. We confess to the same difficulty in understanding the court's position which seems to have burdened defendant's counsel. If he could neither call for a general conversation without limiting it, nor could put a question which had merely the effect of limiting the subjects of the conversation called for, he was indeed in bad case. The defendant was entitled to bring out the facts. If the court deemed it perilous, by reason of the attitude of the witness, to allow any leading, then of course he might restrain the counsel; but in that event he should not have prevented him from putting general questions containing no suggestion of the subject upon which he wished the witness to testify. When counsel, after these confusing rulings, asked for suggestion from the court, we think he was

fairly entitled to it. *Colburn v. C., St. P., M. & O. R. Co.*
109 Wis. 377, 383, 85 N. W. 354. Whether there was error
in denying that request by the remark, "We are not running
a kindergarten," perhaps need not be decided. The manner
of response from court to counsel and the measure of dignity
which should characterize it is largely a matter of taste, about
which disputation is not profitable.

In the cross-examination of the same witness, she having
testified that she had made a complaint against a young man
for bastardy, she was asked: "How long before you left *Good-
win's* did you make that complaint?" and again, "Did you
have a child after you went away?" These were objected to,
the objection overruled, and the evidence admitted only as to
credibility of the witness. No authority is cited to us that the
fact of a woman's illegitimate pregnancy or of her making
complaint for bastardy is admissible as bearing upon her
credibility. It is not authorized by sec. 4073, Stats. 1898.
The admission of such questions and such inquiry, tending, as
it must, to defame the witness before the jury, is error and
highly prejudicial. *Muetze v. Tuteur,* 77 Wis. 236, 243, 46
N. W. 123; *Buel v. State,* 104 Wis. 132, 145, 80 N. W. 78;
*Kolb v. Union R. Co.* (R. I.) 49 Atl. 392, 54 L. R. A. 646;
Rapalje, Witnesses, §§ 197, 201; Thompson, Trials, §§ 525,
535. The error was not cured by the fact that after the ruling
and admission of the evidence, and on a suggestion of doubt
by the court as to the course of the cross-examination, counsel
for the state withdrew the question. The evidence was already
in, and had had its effect upon the minds of the jury, and
there was no instruction by the court to disregard it. Specific
and prejudicial error having been committed, something more
than the remark of counsel that the question was withdrawn
was necessary after it had been ruled on and answered.

Complaint is also made of the rulings of the court with ref-
erence to the testimony of a very important witness, Millie
Sonnenberg, who was a domestic servant at the time of the

alleged offense, and by whom was sought to be proved the fact that the defendant did not go away from his residence at a time to render the commission of the offense possible. There was evidence that the family, including this witness, had all retired to bed, and that all other persons who had been in the lower part of the house had left. The defendant had brought upstairs and put to bed an intoxicated man, and, it was claimed, then returned down to his saloon and proceeded with the shutting-up work about the several rooms. This witness heard him put the man to bed, knew it was defendant by hearing his voice, and then proceeded to testify with reference to the sounds she heard of his steps in passing downstairs, the opening and closing of doors, the clinking of glasses, the winding of the clock, and finally the arrival of the persons who had heard the outcry of the complaining witness in the well. The court first refused to allow the witness to testify in response to questions assuming that the defendant was the person whose steps and other conduct she heard, and then refused to allow her to testify in response to questions as to what sounds she heard without making such assumption, on the ground, apparently, that it was not rendered certain that there was no one other than the defendant in the rooms below. In this respect we think the rulings were far too restrictive. Whether the absence of any other person had been shown conclusively or not, there was evidence tending to establish that fact, and the very nature of the sounds which this witness heard were of a character to justify an inference by the jury that they were made by the defendant. That question should have been left to them, and not decided by the court as a reason for excluding the evidence.

4. Error is assigned upon an extended instruction to the jury upon the subject of admissions, which the court prefaced with the remark, "There has been some evidence given in the case that is claimed to show an admission on the part of the defendant, which it is claimed has a bearing on the issues of

this case." He proceeded: "A voluntary admission or statement of a person accused of crime, in reference to the commission of the crime, or in reference to his motive for the commission of the crime of which he is accused, if you find that any such crime was committed by him, or as to his motive, is received in evidence upon the presumption that a person will not make an untrue statement against his own interest." This was followed by statements of the rule of law as to the feebleness of such evidence, and the necessary precaution by reason of uncertainty as to understanding or memory of witnesses; in one instance, at least, referring to the matter as a "confession," and stating the rule that such confession must be without inducement or menace. The only possible justification for any charge on this subject was the answer of the defendant, made after his wife was rescued from the well, and her brother substantially charged him with putting her there, to the effect that "she can't prove it," or, as defendant himself stated it, "By God, I will give you a chance to prove it." I presume we may take it for granted that this evidence was made the basis of an argument by the prosecution that such answer was not a denial of defendant's guilt, and not such a repudiation of the charge as an innocent man would have made, and very likely, in the course of the argument, such conduct was claimed to constitute an admission of guilt. But of course there was no admission, either of guilt or of any fact; certainly no more so than would have been absolute silence on the part of the defendant. It may well be that from such silence, or from the fact that the response made did not categorically deny guilt, an argument against innocence might have been made; but this does not constitute an admission either out of silence or out of the denial of something else. The words themselves of course admitted nothing. They were denial in form. If any inference was to be drawn, it was from the failure to say something else, not from saying those words. This being so, we cannot regard this instruction other-

wise than as misleading and as extremely likely to convey to the jury, with all the sanction accompanying the court's charge, the idea that they might consider the defendant to have admitted either his guilt or a fact from which guilt might be inferred. The defendant was entitled to the decision of the jury unbiased by anything of that sort.

The circumstances of the case are very peculiar. Either theory involved much of improbability and uncertainty. It was, of course, highly improbable that a man apparently of ordinary characteristics, in the interval of a few minutes in his daily affairs, should decoy his wife to an almost unused building, and plunge her into a well. It was also extremely improbable that the complaining witness should have got into that well, except by the wrongful act of some one, unless her mental or nervous condition might account for it on the theory of confusion or suicide. The balancing of these doubtful probabilities was essentially for the jury, and, while it might not have been improper for them to consider the conduct of the defendant in answering the charge against him when first made, it was not proper for the court to convey to them the idea that any words which the testimony tended to show he had used were capable of a construction either into a confession of guilt or admission of any fact tending to that conclusion. We are unable to construe the charge otherwise than to this effect. If the court did not consider that there was evidence tending to prove either an admission or a confession, a considerable part of that charge was wholly without application to the case and futile. Could or would the jury imagine that the court was indulging in mere academics? Ought they not to believe that every word uttered to them in so important a situation was carefully considered and material to the duty they had to perform? We think they ought to, and ordinarily would, so believe, and that it is impossible to avoid the conclusion that the impression so conveyed to the jury must have been prejudicial to the accused, and may have been the decid-

ing straw which led them to resolve the conflicting improbabilities against him. We are convinced that the giving of this portion of the charge was prejudicial error. *Allen v. Chippewa Falls,* 52 Wis. 430, 433, 9 N. W. 284; *Thayer v. Davis,* 75 Wis. 205, 211, 43 N. W. 902; *Thomas v. Paul,* 87 Wis. 607, 611, 58 N. W. 1031; *State v. Parish,* 78 N. C. 492; *Covington v. State,* 79 Ga. 687, 7 S. E. 153; *Fletcher v. State,* 90 Ga. 468, 17 S. E. 100; 11 Am. & Eng. Ency. of Pl. & Pr. 170 *et seq.*

Since there must be reversal for the errors above specified, and since the other assignments of error are predicated upon details of the trial not likely to present themselves again in the same form, we forego their discussion and decision.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.