STATE v. JOHN P. QUIRK.[1]

June 14, 1907.

Nos. 15,154—(17).

**New Trial—Summoning and Drawing Jury.**

The failure to comply with statutory requirements in reference to summoning and drawing a petit jury is not ground for granting a new trial, when the record shows that a fair and impartial jury was secured, and that the defendant accepted the jury at a time when he had numerous peremptory challenges unused. Under such circumstances the errors and irregularities are without prejudice to the substantial rights of the defendant.

**Exclusion of Witnesses and Spectators from Trial.**

The trial judge may, in his legal discretion, exclude the witnesses, or any particular witness or spectator from the courtroom while witnesses are being examined. The discretion was not abused in this instance.

**Cross-Examination of Accused.**

The extent to which a defendant who becomes a witness on his own behalf may be cross-examined as to matters not relevant to the issue for the purpose of affecting his credibility rests largely in the discretion of the trial court. It was not abused in this case.

**Admission of Accused.**

A statement made by a third party, in the presence of the defendant, immediately or soon after a shooting, in response to a question addressed to the defendant, to which the defendant made no response, is admissible in evidence; and it is for the jury to determine, from all the circumstances, whether the defendant thus by his silence acquiesced in the correctness of the statement.

**Charge to Jury.**

It is the duty of the trial court to instruct the jury as to all the defenses which are properly presented by the evidence.

Defendant was convicted in the district court for Hennepin county of manslaughter in the first degree. From an order of Frederick V. Brown, J., denying a motion for a new trial, defendant appealed. Affirmed.

[1] Reported in 112 N. W. 409.

*Ernest S. Cary* and *Frank L. Morrison,* for appellant.

*Edward T. Young,* Attorney General, *Charles S. Jelley,* Assistant Attorney General, *Al. J. Smith,* County Attorney, and *John F. Dahl,* Assistant County Attorney, for the State.

ELLIOTT, J.

The appellant was indicted by the grand jury of Hennepin county for murder in the first degree, and was convicted of manslaughter in the first degree. The appeal is from an order denying his motion for a new trial.

The assignments of error question the legality of certain proceedings in connection with the impaneling of the jury, the exclusion of a certain person from the courtroom, certain instructions given to the jury, and the extent to which the county attorney was permitted to cross-examine the defendant with reference to his former occupations and modes of life.

1. The proceedings by which the twelve men who served on the jury were inducted into the jury box were decidedly irregular, and would be ground for reversal, if it did not clearly appear from the record that the defendant waived the most serious departures from the statutory requirements, and that in no respect was he prevented from having the question of his guilt or innocence determined by an impartial jury. The jury was accepted by the defendant at a time when he had fourteen unused peremptory challenges. He must have been satisfied that the jurors were fair and impartial men, and nothing appears to even suggest that such was not the fact.

Before the revised laws of 1905 went into effect, the jurors in Hennepin county were selected in the manner provided by chapter 151, p. 154, Laws 1899, and the various panels as needed were drawn as authorized by chapter 240, p. 273, Laws 1899. Chapter 151 required the judges, during December of each year, to select two thousand names of jurors for service during the succeeding year, and this constituted the "grand list" from which panels for short terms of service were selected throughout the year. The grand list for the entire year of 1906 was thus made up in December, 1905. The revised laws of 1905, which went into effect March 1, 1906, repealed chapter 151, p. 154, Laws 1899, and left Hennepin county without a jury law. On January 1, 1907, the

grand list for 1906 became obsolete. A new law was passed on January 18, 1907. Chapter 2, Laws 1907. This case was called for trial on January 14, 1907. It is fair to assume that the court and counsel knew that the old law had been repealed, and that by consent of all parties the jurors were drawn from what remained of the 1906 list. Provisions for the selection of jurors are statutory, and are generally held to be directory merely. In the face of objections, the state must show substantial compliance; but such requirements are not constitutional provisions, and there is no reason why they may not be waived by a defendant.

No challenge was interposed to the panel. "A challenge to the panel is an objection made to all the petit jurors returned, and may be taken by either party. It can be founded only on a material departure from the forms prescribed by law in respect to the drawing and return of the jury, and shall be taken before a jury is sworn, and be in writing, specifying plainly and distinctly the facts constituting the ground of challenge." R L. 1905, § 5383. The defendant interposed no challenge to the panel, and thereby waived any objections to the jury as a whole. Steele v. Malony, 1 Minn. 257 (347). No question is raised in the record as to the proceedings by which the list of jurors was secured. But the appellant does contend that the statute with reference to the drawing of the jury was not complied with and that he was deprived of rights which are secured to him by the statutes. Under the system of procedure in Hennepin county, where six judges and as many courts must be kept going, it is customary, when a case is called for trial, to draw the names of eighteen jurors from the box and send the jurors whose names are thus drawn to a courtroom where the case is to be tried. The jury is then drawn from this list of eighteen names. The next jury is then drawn from the names which remain in the box. In this case the jury was drawn from the box after eighteen names had been withdrawn. The defendant demanded that the names of all the jurors in attendance be placed in the box. What occurred, as shown by the record, is thus stated by the trial judge:

> Eighteen jurors out of the regular panel of jurors which reported in this court this morning were drawn, and those jurors were directed to report to Judge Simpson for the purpose of im-

paneling a jury in the case of State v. Berglof. The next case reached for trial in its order upon the calendar was State v. John P. Quirk, the defendant here, which is No. 32 on the criminal calendar. The remainder of the jurors drawn and reporting to serve at this time were directed to report to be drawn as jurors in this case. Upon those facts the objection will be overruled.

The jury law would seem to require that the names of all the jurors not serving on other cases should be in the box, but such procedure is not always possible in a county such as Hennepin. It would have been well to have complied with defendant's request in a case of this importance, in order to have reduced the possibility of error to a minimum. But the eighteen jurors were in a general sense serving on another case, and, as the jury in this case was actually drawn from the box in the way prescribed by statute, the liberal construction which should be given such requirements leads us to the conclusion that no substantial error was committed. Thomas v. State, 134 Ala. 126, 33 South. 130; 24 Cyc. 254.

After several jurors had been accepted, it became apparent that it would not be possible to secure the other jurors from the names which remained in the box. Chapter 240, p. 273, Laws 1899 (which was not repealed), provides that, "if there be a deficiency of petit jurors, the clerk shall in open court, under the direction of the judge, draw from the box containing the names on the petit jury list [the grand list] the names of additional persons to supply such deficiency, and writs of venire facias shall issue summoning such persons," etc. Proceeding under this statute, a special venire issued, and the new panel thus obtained was returned. It is not necessary that there shall be an entire absence of jurors before a special venire can be issued. The additional jurors may be summoned in anticipation of the exhaustion of the regular panel. People v. Durrant, 116 Cal. 179, 48 Pac. 75; Lambright v. State, 34 Fla. 564, 16 South. 582; Foster's Case, 13 Abb. Pr. (N. S.) 372, note. Regular procedure required that the new names should not have been placed in the box until all the names were withdrawn, and a contrary practice has been held to be reversible error. Hall v. State, 28 Tex. App. 146, 12 S. W. 739. But we can-

101 M.—22

not see how defendant was prejudiced because the names of the new panel were put in the box while eight of the old list were still there. Had these names been withheld, the personnel of the jury might have been different. Even this is conjecture. No defendant is entitled to be tried by any particular juror or jurors. He is entitled to a fair and impartial jury, composed of eligible men. This the appellant had in this case. The statute was not strictly followed; but the defendant expressed himself as satisfied with the twelve men, and he does not even now suggest that the jury was not fair and impartial.

2. During the examination of the state's witness Bessie Squires, the court excluded the defendant's wife, the mother of the witness, from the courtroom. No reason for this order appears in the record. It is claimed that this order violated the defendant's constitutional right to a public trial  Manifestly, this contention is without merit. The exclusion of witnesses is a matter which rests in the discretion of the trial court, and is involved in the power to control the course of the trial in such a manner as to disclose the truth and promote justice. It was not suggested that the presence of the defendant's wife was desired in order to aid the defendant's counsel in the cross-examination of the witness Squires. If such was the fact, the opportunity was at least partially presented at a later stage of the trial, when the witness was recalled by the state and examined when her mother was present. The court did not abuse its discretion in excluding the party. See State v. Weems, 96 Iowa, 426, 65 N. W. 387.

3. The cross-examination of the defendant was extended and severe, but it did not extend beyond what a party must anticipate when he elects to take the witness stand on his own behalf. It is claimed that too much stress was laid upon the fact that the witness had been for years a professional gambler. In a restricted sense this was requiring him to state that he had been engaged in the commission of other crimes; but in a more general sense it called for his occupation and manner of life and affected his credibility. He admitted that he had been convicted several times for running a gambling house, and the county attorney rang the changes on the fact that the witness had been a gambler for many years, to an extent that might well have been restricted by the court. But the extent to which a witness may be cross-examined as to matters not relevant to the issue, for the pur-

pose of affecting his credibility, rests largely in the discretion of the trial court. This examination went to the very limit; but we cannot say that the court abused its discretion. Gardner v. Kellogg, 23 Minn. 463; Alward v. Oakes, 63 Minn. 190, 65 N. W. 270; Malone v. Stephenson, 94 Minn. 222, 102 N. W. 372.

The witness Galvin was permitted to testify as to a statement made by Mrs. Quirk in the presence of the defendant. This evidence was properly received The statement was made in reply to an inquiry addressed to Mr. Quirk as to why he shot Dowell. Mrs. Quirk replied that he shot him "because he ruined my daughter." This was said in Mr. Quirk's immediate presence, and he, by his silence, apparently acquiesced in the statement. As the inquiry was directed to him, and he failed to give any other explanation, it was for the jury to say whether his silence under the circumstances was an admission that the statement was correct. 3 Wigmore, Ev. § 1972; State v. Mortensen, 26 Utah, 312, 73 Pac. 562; People v. Wennerholm, 166 N. Y. 567, 60 N. E. 259. In the charge to the jury the court properly said, with reference to this testimony:

> Now, it is for you to say whether such statements should be taken as admissions of the defendant on account of his silence and failure to deny them, if you believe that the circumstances were such as to require him to deny them, or whether his failure to deny them was due to his determination not to speak at that time, as it is claimed that he asserted at the time.

The claim that the court committed error in refusing to aid the defendant's counsel in framing hypothetical questions is without merit. The circumstances were not such as to impose any such duty in this respect upon the trial judge. Colburn v. Chicago, 109 Wis. 377, 85 N. W. 354, and Goodwin v. State, 114 Wis. 318, 90 N. W. 170, are not applicable upon this record.

The appellant earnestly contends that the order should be reversed because of errors in the charge to the jury. In order to appreciate the force of the contention, it is necessary to consider the charge as a whole. Extracts which might be quoted in an opinion would be misleading. The defendant was charged with shooting William A. Dowell. The fact of the shooting by defendant was practically conceded,

or at least proven beyond question. A great deal of evidence related to the mental and physical condition of the defendant, and must have been intended to impress the jury with the fact that he was mentally irresponsible for his acts. The defendant testified that he was unconscious and unable to remember what occurred immediately before and after the act of shooting; that his mind was totally obscured, and he was unable to realize and did not realize or know what he was doing at the precise time. He also testified that the shooting was done in self-defense. At least this was the effect of his statement that Dowell had a knife, and that he saw him approaching with the evident intention of killing him, as he had threatened to do. The court instructed the jury fully upon the defenses of insanity and self-defense, and the appellant now contends that the question of his insanity was injected into the case by the court without his consent, and that he relied wholly upon the matter of self-defense. It is conceded that he offered evidence to show the mental and physical condition of the defendant; but it is claimed that this was for the purpose only of showing that he was incapable of exercising the degree of forethought and judgment that a sound man would be able to exercise in determining whether he was justified in shooting in self-defense. But a defense arises out of the evidence, and not out of the mind of counsel. The evidence presented the two defenses, and the court properly so instructed the jury. Certain other objections to the charge go to matters of ambiguity and inadvertence, which would have been corrected by the judge if his attention had been called to them at the time. It is now too late to raise such questions.

The appellant makes two hundred fifty two assignments of error, and we have gone through them all with patience and care. The record shows to our entire satisfaction that the appellant had a fair trial, and that his guilt was proven beyond a reasonable doubt. There were no errors which affected his substantial rights, and the order of the trial court is therefore affirmed.