FEDERAL OIL COMPANY v. PEOPLES OIL COMPANY.[1]

March 7, 1930.

No. 27,745.

[1]Reported in 229 N. W. 575.

468

*Frank E. Clinite, Ellsworth, Clinite, Anderson & Dills, Huffman & Smith* and *F. J. McPartlin,* for appellant.

*C. L. Pegelow* and *Pegelow & Bargen,* for respondent.

HOLT, J.

Plaintiff appeals from the order denying its motion in the alternative for judgment or a new trial.

The action was upon a trade acceptance for $1,187.52 due in 90 days after December 1, 1925, upon which defendant had stopped payment. The plaintiff's cause of action was admitted; but as a counterclaim thereto the answer alleged that said acceptance and two others already paid, each in substantially the same amount as the one in suit, were given for a quantity of Federal Oak Motor Oil and Oak Gear Go sold and delivered by plaintiff to defendant. That the motor oil was warranted to flow at a temperature of 15 degrees below zero and to satisfactorily lubricate any gasolene engine. A breach of this warranty was alleged and damages claimed in that the 4,000 gallons sold would have been worth 57½ cents a gallon if the quality had been as warranted, but as it actually was it was worthless and of no value. There was no fault with the Gear Go. After a lengthy trial the jury returned a verdict in favor of defendant for $146. There are numerous assignments of

error, but counsel has grouped them under few heads, thus aiding in the disposition of the appeal.

It is contended that the counterclaim is based on rescission of the sale, an impossible remedy since the sale included two commodities, one of which was retained and part only of the other tendered back; that is, the contract of sale was entire and not severable. Of course this would only be important if the counterclaim rests on rescission. But we are clearly of the opinion that the court correctly construed the answer as stating a counterclaim for damages based upon breach of warranty as to the quality of the oil. On that theory the trial was conducted and the counterclaim submitted.

It was also claimed that although the whole warranty was pleaded the answer did not allege a breach of that part which warranted that the oil would flow at a temperature of 15 degrees below zero. The record however is clear that the parties voluntarily litigated that breach also. It could not well be avoided, for it is common knowledge that efficient lubrication of a gasolene engine in severe winter weather depends upon whether or not the motor oil flows readily or congeals when zero or lower temperature prevails.

Another contention is that the issue of estoppel or waiver of the breach of the warranty should have been submitted to the jury, and appellant cites White Pine Lbr. Co. Inc. v. Madsen & Peterson, 166 Minn. 228, 207 N. W. 628; Washington L. Co. Inc. v. American Sales Service, Inc. 174 Minn. 496, 219 N. W. 764.

L. 1917, p. 767, c. 465, § 49 (uniform sales act) G. S. 1923 (2 Mason, 1927) § 8423, reads:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

To bring itself within the last sentence of this section appellant points to the testimony that the goods were received November 6 or 7, 1925; that thereafter the two acceptances were paid; that about December 24 the last acceptance, the one sued on, was given as an extension of the third which fell due on December 1. But the evidence is all one way that defendant had no knowledge that the oil failed to come up to the warranty until the first part of January, 1926, and immediately plaintiff was informed thereof. As stated, the court did not submit the issue to the jury whether there had been such an acceptance of the goods after knowledge of a breach of the warranty that defendant is estopped from claiming damages for the breach. No objection to the omission to submit that issue was made at the conclusion of the charge; but it was raised on the motion for a new trial. If there had been any evidence warranting the submission of the estoppel or waiver pleaded, it would perhaps have been reversible error not to have submitted it notwithstanding a failure to call the court's attention to such omission, under the decision of Robertson v. Burton, 88 Minn. 151, 92 N. W. 538. See also Sassen v. Haegle, 125 Minn. 441, 147 N. W. 445, 52 L.R.A. (N.S.) 1176; Soderberg v. Crosier, 160 Minn. 468, 200 N. W. 629. But we are of opinion that the evidence did not warrant the submission of estoppel or such an acceptance of the goods within G. S. 1923 (2 Mason, 1927) § 8423, above quoted, as to bar damages for breach of warranty. It could not be claimed that an inspection of the oil would disclose whether its quality was as warranted. Its use during extreme cold weather was necessary to determine its efficiency as a lubricant. It is not like lumber, where a mere look would reveal whether it conformed to the warranty as in one of the above cited cases relied on by appellant. This defendant's business was principally as a distributor of this oil to dealers in a given territory. Plaintiff sold it for that purpose. Naturally it would take time before complaints as to its quality would reach defendant. Account must also be taken of the manner in which automobile owners buy and use oil. They do not as a rule drain the crank case every time a new lubricating oil is used. The usual method is to fill in a quart as needed. Also failure of an oil properly to

lubricate is not easy of detection. Short drives, moderate speed, fair road conditions, and favorable temperature may not subject the lubricating qualities of the motor oil to a test. So it is not to be wondered at that when on December 24 defendant gave the acceptance in suit it did not know that the oil was not as warranted. At any rate, there is no evidence that its customers raised any complaints until about January 1, 1926, when plaintiff was promptly advised. We are satisfied that the evidence does not justify the submission of the estoppel pleaded, or that defendant, after acceptance of the oil, failed within reasonable time to give notice of the breach of warranty.

Error is assigned as to the damages. Only one witness, Mr. Vance, testified concerning the value of the oil. His testimony was that if it had been of the quality warranted it would have been worth 57½ cents per gallon, the contract price, and in answer to the question: "What was the value of this oak motor oil that the Federal Oil Company delivered to you under their contract and guaranty?" the witness answered: "Well, it is absolutely worthless in our business because it costs us great loss—" Here the court stopped the witness saying, "Never mind the reason." The verdict indicates that the jury did not conclude that the oil was entirely worthless. Neither did the witness so state, and the learned trial court was in error when the jury were instructed that the witness had testified "that in his opinion it was worthless." The court's misstatement of this testimony and the insufficiency of the testimony as given to furnish the basis for a finding of the value of the oil in its condition or quality when delivered necessitates a new trial of the issue of damages. This brand of oil has been on the market several years. The evidence shows its price to be higher than that of some other brands. It also discloses that in Duluth, where the winters may be expected to be almost as severe as at Bemidji and surrounding territory to the west, there was a more or less ready market for the oil. Under this situation a verdict which wipes out more than one-third of the sale price should rest on a more substantial foundation than the one indicated, namely, that it was worthless in defendant's business.

Our conclusion is that plaintiff had had a fair trial as to all issues upon which there was evidence to submit to a jury except the one of damages. And it is ordered that the order denying judgment for plaintiff notwithstanding the verdict be affirmed, but in so far as it denied a new trial it be and is reversed as to the issue of damages, and the cause is remanded to try that issue alone.

[1] Reported in 229 N. W. 582.