FRANK M. ADELMANN v. ELK RIVER LUMBER COMPANY AND ANOTHER.[1]

June 18, 1954.

No. 36,276.

[1]Reported in 65 N. W. (2d) 661.

*Larson, Loevinger, Lindquist, Freeman & Fraser,* for appellant.
*Meagher, Geer, Markham & Anderson, D. W. Nord,* and *O. C. Adamson II,* for respondents.

MATSON, JUSTICE.

Plaintiff appeals from an order denying his motion to set aside the verdict and grant a new trial.

On April 25, 1954, at 4:30 p. m., plaintiff was proceeding north on Seventeenth avenue southeast in Minneapolis, Minnesota. The weather was clear and the streets were dry. As he approached the intersection of Seventeenth avenue southeast and Fourth street southeast he reduced his speed to about five miles per hour. As his panel truck reached the edge of the intersection he looked to his left and to his right and, seeing nothing coming from either way, he shifted gears and proceeded into the intersection.

Unseen by the plaintiff, a truck owned by defendant Elk River Lumber Company and operated by defendant Andrew Shipman, Jr., was proceeding west on Fourth street and approaching the same intersection. Defendant Shipman did not see plaintiff's truck until

it was beginning to cross the streetcar tracks near the center of the street. At that moment defendant's truck was 30 feet from the intersection and proceeding at a speed of 30 miles an hour. Upon seeing plaintiff's truck, Shipman slammed on the brakes and, unable to stop, slid into the right side of plaintiff's truck at the northerly rail of the streetcar tracks. Plaintiff was unaware of the approach of defendant's truck until seconds before when his daughter, who was seated beside him, said, "You are going to get hit." At her utterance he glanced out of the right window past her and saw the defendants' truck, but he was unable to avoid the collision which followed within a few seconds. Plaintiff's truck was tipped over on its left side and came to rest by the northwest corner of the intersection. Defendants' truck stopped at approximately the same place.

In plaintiff's action for damages the jury returned a verdict for the defendant. Plaintiff appeals from an order denying his motion for a new trial.

We need consider only these issues:

(1) Was it error to refuse to instruct the jury as to the duty of a driver to drive at an appropriate reduced speed when approaching the intersection when the jury could reasonably find that special hazards existed as to other traffic?

(2) Was it error for the court to state in its charge to the jury that "as the Court recalls" the plaintiff testified that he entered the intersection without looking to his right?

(3) Was it prejudicial error for the court to refuse to indicate on what ground it had sustained an objection to a hypothetical question asked of an expert witness?

■■■ Plaintiff requested that pursuant to M. S. A. 169.14, subd. 3, the jury be instructed that the defendant driver was required to drive at an appropriate reduced speed when approaching the intersection. Plaintiff's request as made was incomplete insofar as it failed to limit the appropriate reduced speed requirement at inter-

sections to circumstances where special hazards exist.[2] Pursuant to § 169.14, subd. 3, as construed by this court, the mere presence of an intersection, although it bespeaks precaution, does not require an approaching motorist, possessed of the right of way, to drive at an appropriate reduced speed unless and until special hazards exist on and about such intersection with respect to pedestrians or other traffic or by reason of weather or highway conditions.[3]

The defendant driver, traveling west on Fourth street, approached the intersection at the prima facie reasonable speed of 30 miles per hour, and he continued at such rate until he was 30 feet away from the intersection when for the first time he saw the plaintiff who, according to defendant's testimony, was then just starting across the streetcar tracks. Under the circumstances the jury could reasonably have found, upon defendant's own testimony and more clearly so upon plaintiff's evidence, that the plaintiff, who was traveling at a slow rate of speed, had actually entered the intersection and was in plain sight of the defendant long before the defendant first saw him. The jury could further find that the defendant in the exercise of reasonable care ought to have observed the special traffic hazard of plaintiff's presence upon the intersection and ought therefore to have reduced his speed appropriately in time to avoid the collision. Under the circumstances the plaintiff was entitled to an instruction that the prima facie reasonable speed of 30 miles an hour was not necessarily controlling and that the defendant was required to drive at an appropriate reduced speed if the jury found that a special traffic hazard existed upon the intersection. It is not to be overlooked that in prescribing that an approaching motorist forfeits his right of way for unlawful speed, § 169.20, subd. 1, uses the phrase

[2]Section 169.14, subd. 3, provides: ·

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection * * * and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

[3]See, Neal v. Neal, 238 Minn. 292, 56 N. W. (2d) 673; cf. Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31; Hustvet v. Kuusinen, 184 Minn. 222, 238 N. W. 330; Norling v. Stempf, 208 Minn. 143, 293 N. W. 250.

"unlawful speed" as embracing not only speeds in excess of the prescribed maximums but also speeds in excess of the appropriate reduced speed prescribed by § 169.14, subd. 3, for intersections where special hazards exist.[4]   Although plaintiff's requested instruction was not stated with completeness, it was sufficient to call the court's attention to the appropriate reduced speed instruction which ought to have been given here.

■ In its charge to the jury the court said:

"* * * The plaintiff, Adelmann, testified as the Court recalls, that he entered the intersection *without looking to his right for traffic coming from his right,* and that at some time or at some point after entering the intersection, he looked to the right and saw nothing in a distance of 150 feet * * *." (Italics supplied.)

According to the record, plaintiff testified positively that just before he proceeded into the intersection he looked first to the left *and then to the right.* .There is nothing in the record to justify the court's statement of fact that plaintiff entered the intersection without looking to his right.   It is true that later in the charge the jury was told to rely entirely upon its own recollection of the facts and to disregard any of the court's statements of fact which were not in accord with their own recollection.   Usually minor misstatements of fact by the court are harmless when followed by a curative instruction to the jurors to rely upon their own recollection.   In this case, however, the court's misstatement of a pivotal fact was so significant that, despite the court's curative admonition, the jury may reasonably have been misled.   A trial court's erroneous statement of the evidence upon a pivotal fact, which might have had under all the surrounding circumstances an important bearing on the jury's evaluation of the evidence, is ground for a reversal.   Larkin v. City of Minneapolis, 112 Minn. 311, 127 N. W. 1129.

■ Did the court err in refusing to give the ground for sustaining an objection to a hypothetical question asked of an expert wit-

---

[4]Norton v. Nelson, 236 Minn. 237, 244, 53 N. W. (2d) 31, 36; Johnston v. Selfe, 190 Minn. 269, 273, 251 N. W. 525, 527; Hustvet v. Kuusinen, 184 Minn. 222, 223, 238 N. W. 330, 331.

ness? Plaintiff's counsel asked an engineer from whom he was trying to obtain an expert opinion to assume the truth of certain hypothetical facts and then to give an opinion as to the speed of defendant's truck at the point where the brakes were first applied. After several attempts to frame an acceptable hypothetical question, the following colloquy took place:

"Mr. Markham: I object to that on the ground, assuming facts not in evidence; calling for speculation and conjecture on the part of the expert, no proper foundation, *and the same grounds I previously elicited.*

"The Court: Objection sustained.

\* \* \* \* \*

"Mr. Freeman: Might I inquire of the Court which of the numerous objections Counsel has propounded is within the point resulting in the sustaining of the objection. There were quite a string of them as I recall.

"The Court: Well, the objection is sustained, you heard the objection.

\* \* \* \* \*

"Mr. Freeman: May we retire to chambers?

"Mr. Markham: I see no reason for that.

"The Court: We might as well proceed here, the Court has ruled on the objection. *If the Court is in error, you know your remedy.* We cannot spend an indefinite period of time in trying this lawsuit." (Italics supplied.)

We do not pass upon the correctness of the court's exclusion of the engineer's expert opinion as to speed but only upon the propriety of the court's refusal to state the ground upon which it finally sustained opposing counsel's objection to the hypothetical question. The purpose of requiring objecting counsel to specify the ground or grounds of his objection to a hypothetical question is not merely to enable the court to rule intelligently thereon but also to afford opposing counsel an opportunity to amend and overcome the defect

in his question if possible.[5] Whenever counsel is in doubt as to why the court sustained an objection to his hypothetical question, he should be informed so that his errors, if any, may be corrected; and he should not be left to the sole remedy of appeal. In the instant case the objection was sustained for the expressed catch-all reasons that the question (1) assumed facts not in evidence, (2) called for speculation and conjecture, (3) lack of proper foundation, and (4) *for all the other grounds which counsel had previously stated.* It is elementary that the objector to a hypothetical question must indeed be reasonably specific as to which ground or grounds upon which he bases his objection. Insofar as interrogating counsel is in doubt as to the basis upon which the court sustains such objection it is right to make inquiry of the court, and it is the court's duty to answer that inquiry.[6] It does not follow, however, that the court was under any duty to assist counsel in framing his hypothetical question.[7]

In the leading case of Colburn v. Chicago, St. P. M. & O. Ry. Co. 109 Wis. 377, 382, 85 N. W. 354, 355, the principles and reasons applicable in a situation of this kind were stated when the supreme court of Wisconsin held:

"It should be remembered that the object of making objections is not for the sole purpose of enabling the objecting party to insist on error in the appellate court, but that one of the objects is to enable the counsel putting the questions to avoid error and more effectually prove his case or defense. We think the defendant's counsel should have been required to make more specific objections, if he had any; or, at least, have been required to state the theory upon which he regarded such questions objectionable. Upon sustaining one of such objections, counsel for the plaintiff appealed to the

[5]Colburn v. Chicago, St. P. M. & O. Ry. Co. 109 Wis. 377, 85 N. W. 354; Rhodes v. Meloy (Tex. Civ. App.) 289 S. W. 159; see, State v. Pearson, 153 Minn. 32, 189 N. W. 404; Graves v. Bonness, 97 Minn. 278, 107 N. W. 163; 6 Dunnell, Dig. & Supp. § 9739; 58 Am. Jur., Witnesses, § 858.

[6]Colburn v. Chicago, St. P. M. & O. Ry. Co. *supra;* State v. Hoffman, 240 Wis. 142, 2 N. W. (2d) 707.

[7]State v. Quirk, 101 Minn. 334, 339, 112 N. W. 409, 412.

court to indicate specifically and in such manner 'the ground and reason of sustaining the objection,' that he might 'form questions to meet the court's rulings.' But the only response of the court was that 'the objection goes to the foundation; if you will think about this matter a while, and think about putting in expert testimony on this question, I think you will see,'—to which statement and ruling the plaintiff duly excepted. We cannot sanction such a response of the court to such an appeal. *True, counsel of the respective parties are expected to try their own side of the case, without the aid of the court. But when counsel on either side is unable to comprehend the ground or reason for excluding evidence, and in good faith appeals to the court to specifically indicate such ground and reason in order that he may frame his questions in such a manner as to meet such ruling, then, in our judgment, it becomes the duty of the court to indicate such ground or reason specifically.*" (Italics supplied.)

The order of the trial court is reversed and a new trial is granted. Reversed.

UPON DENIAL OF PETITION FOR REARGUMENT.

On July 30, 1954, the following opinion was filed:

PER CURIAM.

Defendants' petition for reargument is denied.

(1) Defendants erroneously contend that the order of the trial court should be affirmed, despite the errors set forth in the above opinion, on the ground that plaintiff was contributorily negligent as a matter of law for failing to see that which was in plain sight. Plaintiff testified that just before he entered the intersection he looked to his right and saw nothing for a distance of 150 feet, or perhaps halfway down the block. Considering the speed of the two vehicles, a jury could reasonably have found that defendants' truck was not then within 150 feet of the intersection and that plaintiff was not negligent in failing to see such vehicle. If defendants' vehicle was more than 150 feet away, the jury could reasonably conclude, in the light of the speed of both vehicles, that plaintiff was

not contributorily negligent as a matter of law in entering the intersection. The issue was for the jury.

(2) Defendants further assert that the issue of the trial court's error was not properly before this court since plaintiff failed to comply with Rule 51 of the Rules of Civil Procedure which requires a party, *before the jury retires,* to object to *unintentional misstatements and verbal errors, or omissions* in the charge. In this respect Rule 51 is declaratory of the prior Minnesota law. 2 Youngquist & Blacik, Minnesota Rules Practice, p. 555. The rule applies to inadvertent, technical, or nonfundamental defects and ambiguities or omissions which do not destroy the substantial correctness of the charge as a whole.[8] Here the defect in the charge, which clearly suggested to the jury that plaintiff entered the intersection *without looking to his right* for traffic from that direction, was a fundamental error since it submitted to the jury a controlling issue of negligence which did not exist in fact and had no possible basis in the evidence. The error was not only fundamental but prejudicial. Anderson v. Wormser, 129 Minn. 8, 151 N. W. 423; Farnum v. Peterson-Biddick Co. 182 Minn. 338, 234 N. W. 646; 6 Dunnell, Dig. & Supp. § 9798.[9]

Since this fundamental error was assigned in plaintiff's motion for a new trial, the issue was properly before this court.

Petition for reargument denied.

---

[8]MacIllravie v. St. Barnabas Hospital, 231 Minn. 384, 43 N. W. (2d) 221; Storey v. Weinberg, 226 Minn. 48, 31 N. W. (2d) 912; Dehen v. Berning, 198 Minn. 522, 270 N. W. 602; Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754; 2 Youngquist & Blacik, Minnesota Rules Practice, Comments to Rule 51, p. 554.

[9]The same rule applies to failure to submit an important or controlling issue to the jury. See, Robertson v. Burton, 88 Minn. 151, 92 N. W. 538; Sassen v. Haegle, 125 Minn. 441, 147 N. W. 445; Federal Oil Co. v. Peoples Oil Co. 179 Minn. 467, 229 N. W. 575; 6 Dunnell, Dig. & Supp. § 9798.