(61 App. Div. 286.)

## TWISS v. LEHIGH VAL. RY. CO.

(Supreme Court, Appellate Division, Third Department. May 8, 1901.)

TRIAL—DISAGREEMENT OF JURY—COERCING VERDICT.

A jury, being unable to agree, reported such disagreement in the evening, and were sent out, and made a similar report on the following morning. The court then told them that they should have no interest in the case, except to do what was right, and should not be struggling and failing to agree, and that it was disastrous to the parties to have to try causes over and over again. He also said that he hoped there were no stubborn men on the jury, and that there ought not to be a disagreement, and that if he were a juryman, and a large portion of his fellows were against him, and he thought they were honest and fair, he would try to find out what was the matter with himself. There was much more of the same character, and he also told them that they would get their dinner and supper if they did not agree. *Held* a sufficient coercion of the jury to authorize a reversal of the judgment rendered on their verdict.

Appeal from trial term.

Action by Hiram V. Twiss against the Lehigh Valley Railway Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Diven & Diven, for appellant.

Woodward & Pillet, for respondent.

PER CURIAM. We think it is only necessary, for the disposal of this appeal, to refer to the declarations made by the court to the jury, which to us seem to amount to a coercion of the verdict rendered. The jury, after being out for some time, returned into court about the hour for the adjournment of the court, and reported a disagreement. In the absence of counsel for defendant, the court directed the jury to retire, and, upon agreement, to report the following day with a sealed verdict, and said:

"If you do not agree before seven o'clock, the sheriff will give you your supper; and, if you do not agree before seven o'clock in the morning, the sheriff will give you your breakfast."

At 9:30 o'clock the following morning the jury again came into court, and reported that the disagreement continued. In the absence of counsel for defendant, the court said to them:

"Twelve men should have no interest in the case, except only to do what is right between the parties,—should not be struggling and failing to agree. * * * It is disastrous to the parties to retry a case over and over, and the jury fail to reach a verdict. * * * I certainly hope there are no stubborn men on the jury. There ought not to be. * * * It is the only case for a jury to be tried at this term, and, in my judgment, there should not be a failure of this character. * * * If I were a juror, and quite a large proportion of my fellows were against me, and I were standing out, and I thought they were honest and fair, the first thing I would do would be to get before a large looking-glass, and look at myself and see if I could find out what was the matter with me."

Much more of this character was then said to the jury, plainly conveying the idea to the jury that, in the opinion of the court, it was only a disposition to be stubborn which prevented an agreement,

70 N.Y.S.—16

and not at all a conscientious belief reached by reasoning from the testimony. The court then said:

"I want you, as farmers, to hear evidence, and tell me what is the best breed of cows for all ordinary purposes. One man would begin to think, and he would say the Jersey is the best cow, because she gives rich milk and more cream; and another man would say the Guernseys are the best, for they give more milk; * * * and, if I was to say to those fellows, 'I want you to get together, and I want you to name some certain cow that combines all the best qualities for an average cow, and you cannot have a bit of butter or milk until you do so,' how long do you think they would be out? * * * I believe, gentlemen, that you can agree. There is no doubt about it in my mind. * * * If you do not agree before half past twelve o'clock, the sheriff will give you your dinners; and, if you do not agree before half past six, he will give you your suppers. I shall instruct him to take care of you, and I will not deprive you of your milk because you haven't yet agreed about this cow."

The impression which must have been created in the minds of the jurors by such language and such illustrations could not be flattering to the integrity or good judgment of any juror who failed to yield his honest belief to the majority. The impression must also have been very deep and firm in the minds of all that there was little hope of liberty unless a verdict was presented; that the only chance to be relieved from their seclusion and their physical sufferings was through a surrender of their individual judgments. There was a clear intention here that, unless they agreed upon a verdict of some sort, they would be at least subjected to another night of confinement. A verdict under such circumstances must be regarded as the effect of coercion, and should be set aside. It is said in 16 Am. & Eng. Enc. Law, 522, that the proper rule to govern in such matters is that "language on the part of the court, the obvious tendency of which is to coerce an agreement on the part of the jury, affords grounds for a new trial." We think that an application of this rule, and the rule declared in People v. Sheldon, 156 N. Y. 268, 50 N. E. 840, and in the cases there cited, makes a new trial necessary.

Judgment reversed and new trial granted, costs to abide the event.