in this case, for the reason that the present question was fully argued orally and upon the briefs submitted.

The motion for a reargument should therefore be denied.

O'BRIEN and McLAUGHLIN, JJ., concur. VAN BRUNT, P. J., and INGRAHAM, J., dissent as to the first ground stated in opinion, and concur as to last ground.

(79 App. Div. 519.)

## HAGEN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court. Appellate Division, Fourth Department. January 30, 1903.)

**1. TRIAL—VERDICT—COERCION BY JUDGE.**

A case was given to the jury some time during April 25th, and that evening the justice learned that the jury stood 10 to 2. At 11:30 a. m. on the 26th the jury announced a disagreement, when the justice stated that they should agree. Plaintiff's counsel objected, and requested that the jury be discharged. The court declined, and directed the jury to retire, and stated that the jury should agree, without one side threatening to stay there all summer, and that there was no use in fooling away time about the case; that it had been three times tried, and the jury should agree. The foreman thereupon stated that there was no prospect of an agreement. At 7:45 p. m. the jury reported no change of sentiment, whereupon the court again stated that the case was ripe for honest decision, and that it was the conscientious duty of the jury to find the truth that glitters in the case; that "it glitters and shines, and shines into the hearts and consciences of every honest juryman"; that if 10 men were one way, and 2 the other, there was something wrong in the intelligence or in the conscientious action of some jurymen; and that it was an outrage on decency to keep a jury out, when they knew what the truth was, but that he was obliged to order them to retire. The jury again retired, and in an hour thereafter returned a verdict for plaintiff. *Held*, that the verdict was the result of coercion, and should be set aside.

**2. SAME—MISCONDUCT OF ATTORNEY.**

Where plaintiff's attorney, on the jury coming into court and announcing that they were unable to agree, requested that it be discharged, and stated that it was idle to send the case back, as they stood 10 to 2; that there was a determination on the part of 2 men to block plaintiff's right in the case, and these 10 men, if they should be for plaintiff, should not be dragged into finding a low verdict by this obstructionist on the jury; and that it was an outrage,—such conduct of the attorney should have caused a dismissal of the jury.

Appeal from trial term, Oneida county.

Action by John J. Hagen, an infant, by his guardian ad litem, against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, and granting an extra allowance of costs, defendant appeals. Reversed.

On the 20th day of July, 1895, the Frankfort Mutual Benefit Association of the West Shore Shops, which was composed of railroad men residing in and about Frankfort, in the county of Herkimer, arranged for and conducted an excursion to a place known as "Sylvan Beach." For this purpose a special train was chartered by a committee duly authorized, and this train was run over and upon the defendant's road in two sections, one of which was in charge of a man by the name of John Garvey, a member of the association selected by the defendant. The plaintiff, Hagen, who at

that time was a lad of 13 years of age, was in the employ of a firm which had bought the right to peddle refreshments upon this train; and when Garvey's section reached Frankfort, on its return from Sylvan Beach, Hagen got on board, and started to walk up the steps at the west end of one of the cars. When he had reached the platform of the car, the evidence tends to show that Mr. Garvey came out of an adjoining car and ordered Hagen off; telling him that, if he did not obey, he would kick him off. Hagen then turned around, put both hands upon the railing of the steps, and went down to the bottom step, where he waited about 15 seconds, more or less, with his left hand upon the railing, when, as he says, there was a sudden jerk of the car, which threw him off, and he fell to the ground, with his feet under the car, and was so seriously injured that it became necessary to amputate his left leg about three inches above the ankle. His right foot was also crushed, and about 10 days later it became necessary to amputate that, also, at the middle of the instep. At the time Hagen was thrown off in the manner above stated, the train was moving at the rate of five miles an hour, but no claim is made by the plaintiff that the defendant was in any respect negligent in the management of the train; the contention being that he was wrongfully ordered off by Garvey, who was temporarily in charge of the train, but not in the employ of the defendant.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and NASH, JJ.

Thomas D. Watkins, for appellant.
William Kennedy, for respondent.

ADAMS, P. J. This case has been four times tried, and the record therein of the fourth trial, which is now before us, presents one of the most remarkable attempts to secure a verdict which has ever been brought to our attention. The trial was commenced upon the 23d day of April, 1902, and the case was given to the jury some time during the day of the 25th, but at what hour does not definitely appear. It seems, however, that in the evening of that day it was in some manner brought to the knowledge of the trial justice that the jury were divided in their views; standing 10 for one party, and 2 for the other. At half past 11 o'clock on the morning of April 26th, which was Saturday, the jury came into court, and announced, through their foreman, that they were unable to agree, whereupon the trial justice, after expressing his surprise that there should be any disagreement in a case of this character, said to them:

"Now, gentlemen, I do not want to have you feel as though I am hard in this matter, at all, by keeping you out. But I really feel it my duty to the parties in the case, and in the interest of justice, not to discharge you at this time. It would seem, gentlemen, that when a jury stands, as it has been stated by some of your number last evening, 10 to 2, that you ought to agree. * * * Now, gentlemen, I hope you will retire and take this under consideration,—not get warm about it on the respective sides, but harmonize. Harmonize, if you can, and agree, and render in this case a just verdict. Now, gentlemen, you may retire."

Some further directions on the part of the court were called out by a question from one of the jurors, and before the jury had actually retired the plaintiff's counsel made the following statement to the court:

"It seems to me, if your honor please, in view of the facts of this case —in view of what appeared here yesterday on the part of one of these jurors, at least—that it is idle to send this case back to them. The deter-

mination on the part of two men to block the plaintiff's right in this case, I except to that. I don't want my case sent back here, and these ten men, if they should be for the plaintiff, dragged into finding a low verdict by this obstructionist upon this jury. We know who he is, and it is an outrage."

To this statement the court replied:

"No; I won't do that. These jurymen are conscientious and honest men, and I know, irrespective of any suggestion with reference to one or two or half a dozen, when they go out and consult in this matter, that they are honest and conscientious men, and that they will arrive at a just verdict. You may retire, gentlemen."

Thereupon, and before the jury actually retired, these further proceedings were had:

"Counsel for the Defendant: If your honor please, they may disregard the remarks—any remarks that have been made. Counsel for the .Plaintiff: I don't want my case frittered away. I don't want ten honest men tired out by the action of an obstructionist. The Court: I believe that the jury in this case are conscientious men, and that they will get together in this case. Counsel for the Defendant: I ask your honor to charge the jury that they disregard the last remark. The Court: Yes; you may disregard any statement that has been made by the plaintiff's counsel. Counsel for the Plaintiff: I protest against my case being sent back. Counsel for the Defendant: I assume that, in charging the jury in reference to your wish that they get together and agree, that thereby your honor does not intend in any wise to convey the suggestion that if there may be two men in minority, that have honest differences and honest principles— The Court: I simply want to say to the jury I want them to harmonize, if they can, and find the truth, and be .conscientious about it. Counsel for the Defendant: Based upon their principles and belief of right? The Court: Based upon fair and reasonable harmonizing between them, without one side threatening to stay there all summer, or anything ' of the kind. But be conscientious about it, gentlemen. Do right about this. There is no use of frittering and fooling away about this case any longer. It has been tried three times, gentlemen. The court has great respect and consideration for the way you have rendered your verdicts on all cases before you at the term of court, and I am satisfied that, when you talk this matter over reasonably and fairly between yourselves, that you will agree, irrespective of what counsel say on either side. Now you may retire. The Foreman: What more prospect is there now of our agreeing than there was then? The Court: I have got faith in the jury, and I believe they are conscientious men, and that they will get to the right,—whatever is right."

Thereupon the jury retired. At 7:45 o'clock in the evening of April 26th the jury again came into court, whereupon the following proceedings were had:

"The Clerk: Gentlemen of the jury, have you agreed upon your verdict? If so, who shall say for you, and how do you find? The Foreman: No change in the sentiment at all. The Court: You say that the jury stands ten to two? The Foreman: Yes. The Court: Gentlemen, I hardly know what to say to you, but I may say something that may not be very satisfactory to some of you. This case has been tried now four times, and on this occasion it is just and ripe for an honest and just decision. And it is your duty, gentlemen, to be conscientious and honest in finding the truth that glitters. It glitters in this case gentlemen. It glitters and shines. and shines into the hearts and consciences of every honest juryman. I feel as though it was a travesty upon justice that if ten men in a case of this kind are one way,. and two the other, that there must be something wrong somewhere in the intelligence or in the conscientious action of some jurymen. I feel, gentlemen, that it is an outrage upon decency to keep a jury out in this case, when you know and realize where the truth is,—keeping men out overnight in this case. I am obliged to have you go out again, and you

may bring in, if you agree, a sealed verdict, and return here, if you agree; and, after signing your verdict and giving it to your foreman, you can then separate, and be here to-morrow morning at eleven o'clock, at which time, when I adjourn, I will adjourn to. Now, gentlemen, take this case, and, when you find and know and realize the truth of it, render your verdict conscientiously, without passion or prejudice or sympathy. You may retire. Counsel for the Defendant: If your honor please, I desire to ask the court that this jury be discharged from the further consideration of the case. And I desire to ask the court to say to them that, while jurors should endeavor to reach a conclusion in this case, they should not do so when such conclusion is against their honest and conscientious convictions and belief. The Court: I have so charged. Now you may retire, gentlemen. The Counsel for the Defendant: May I have an exception in there? The Court: Not unless you except in the presence of the jury.

"An adjournment taken to Sunday morning, April 27, 1902, at 11 o'clock."

The jury thereupon again retired, and in about an hour thereafter came into court, and reported that they had finally agreed upon a verdict for the plaintiff in the sum of $8,000.

We think it very clear that this verdict was wrung from the jury as the result of the coercive measures adopted by the court to that end, and that it in no sense reflected the calm, deliberative judgment of the jury themselves. In saying this, we are not unmindful of the fact that the case had already been three times tried without agreement, and that the trial court was naturally anxious to avoid the necessity of another trial; but this, in our opinion, did not furnish satisfactory or adequate reason for adopting the unusual methods and for indulging in the very remarkable language employed by the trial justice in his effort to bring about the desired result. Ordinarily no one but the jurors themselves is supposed to know the result of their deliberations until they have come into court and made a public announcement thereof. Indeed, it would defeat one of the most salutary objects of the jury system if the ban of secrecy were to be removed, and the standing of the jury proclaimed to the world before a verdict had been actually agreed upon and rendered; but in this instance it seems to have been not only known by the court and plaintiff's counsel precisely how the jury stood, but this knowledge was imparted to every one in the courtroom; and the two men upon the jury who were unable to agree with the majority of their associates were virtually charged with acting from improper motives, and told that it was a travesty upon justice and an outrage upon decency for them to maintain their position any longer, which was, in effect, a notification to the entire jury that, unless some of its members surrendered their private judgment, it would result in their being deprived of their liberty for certainly another night, if not longer. This assuredly was coercive to the last degree, and was not only prejudicial to the parties, but it was also an act of injustice to the jurors themselves. It is undoubtedly true that the trial court is not bound to accept as final the statement of jurors as to their inability to agree, and that, in determining whether or not a jury shall be discharged for this reason, the court is invested with discretionary power, which, when reasonably exercised, ought not to be interfered with; but it is equally true that, where the language or methods adopted by the court to prevent a mistrial have an obvious

tendency to coerce an agreement, there is an abuse of discretion amounting to an illegal assumption of power upon the part of the court itself, which, in a case where such abuse is made to appear as clearly as in the one now under consideration, gives· to the verdict obtained by such means no value whatever, and necessarily brings about the very result which the court was attempting to prevent. Twiss v. Lehigh Valley R. R. Co., 61 App. Div. 286, 70 N. Y. Supp. 241; People v. Sheldon, 156 N. Y. 268, 50 N. E. 840, 41 L. R. A. 644, 66 Am. St. Rep. 564.

Our attention is also directed to the proceedings subsequent to the rendition of the verdict, which are set forth at length in the record, and which, to say the least, were very unusual, and not in accord with our sense of propriety, but inasmuch as, under the circumstances, they could not possibly have had any influence upon the final action of the jury, they do not require especial consideration from this court; but we cannot dismiss the case without giving emphatic expression to our disapproval of the conduct of the counsel for the plaintiff while the jury were in court for the purpose of reporting the result of their deliberations. His statement as to the standing of the jury, and his direct charge that some of their number were influenced in their action by improper motives, were most unseemly and disorderly. Indeed, they were sufficient of themselves to have warranted the court in dismissing the jury; and, in our opinion, this is precisely what ought to have been done, and the omission of the court to rebuke such a breach of professional decorum furnishes an additional reason for our unwillingness to affirm the judgment in this case.

In view of the conclusion at which we have arrived, and which has already been indicated, we do not deem it necessary or proper to discuss the case upon its merits, or to consider any of the exceptions contained in the record.

Judgment and orders reversed, and new trial ordered, with· costs to the appellant to abide event. All concur.