# JAMES L. MAR v. SHEW FAN QUI and Others.[1]

July 16, 1909.

Nos. 16,218—(123).

**Forcing Jury to Agree.**

Though the trial court in its discretion may urge upon a disagreeing jury a further consideration of the case, in the hope that an agreement may be reached, it exceeds proper limits when it attempts to coerce a verdict by undue means.

**Same.**

The jury reported their inability to agree, whereupon the court said to them, among other things: "The facts are plain. There is no law in this case * * * and I do not feel that I can let you go until you return a verdict." *Held,* an improper coercion of the jury.

Action in the district court for Hennepin county to recover $500 alleged to have been lost in betting upon certain games of chance in defendants' gambling house. The case was tried before Charles L. Smith, J., and a jury which returned a verdict in favor of plaintiff for $250. From an order denying defendants' motion to set aside the verdict and for a new trial, they appealed. Reversed.

*Hall & Kolliner,* for appellants.

*Bardwell & Levy,* for respondent.

BROWN, J.

Action to recover money alleged to have been lost by plaintiff at gambling rooms operated by defendants in the city of Minneapolis. Plaintiff had a verdict, and defendants appealed from an order denying a new trial.

A large number of errors are assigned and discussed in the briefs. One in particular, charging irregularities in the proceedings below, received the greatest attention on the argument and in the briefs. This related to efforts on the part of the court and counsel, acting under section 4664, R. L. 1905, and occupying nearly two days, to

[1] Reported in 122 N. W. 321.

discover the form of oath administered under the laws of China, on the theory that it was more binding on the conscience of Chinamen than our own. Many of the assignments present unimportant matters and will receive no separate consideration. The error presently to be mentioned reverses the case, so we deem it unnecessary to determine whether the proceedings relative to a Chinese oath constituted such irregularity as to justify a new trial. We may say in passing, however, that if the method of administering the oath to witnesses in some foreign country cannot be ascertained in less than two days' effort, the court would be fully justified in declining to make it, in admonishing the witnesses in an emphatic way of the consequences of perjury under the laws of this state, and proceeding with the trial according to our own forms of procedure.

The principal issue in the case, namely, whether plaintiff had lost money at the defendant's gaming table, was closely contested on the trial, and the evidence was sharply conflicting. The case was given to the jury under proper instructions, and they retired for deliberation. After being out some time, the record does not say how long, the jury reported to the court that they were unable to agree upon a verdict, whereupon the court gave them the following instructions:

"Gentlemen, I don't know any more about how you stand in this matter than some foreigner in a foreign land; but I wish to say this: It is your duty to act honestly and conscientiously in your deliberations. No one or two men have a right to get off in a corner and deliberately refuse to discuss and argue the testimony presented to you. One or two jurors are not justified in holding out and blocking a jury, unless they feel morally certain that they are right. You are sent there to deliberate, and to discuss and argue with each other, and try conscientiously to come to a conclusion. This is not a case where you should not come to a verdict. The facts are plain. There is no law in this case. It is a plain, simple question of fact, and you are just as able to decide that question as any twelve men we can get; and I do not feel that I can let you go until you return a verdict."

The jury again retired, and soon thereafter brought in a verdict for plaintiff, assessing his damages at $250. Plaintiff brought his action to recover $500, and testified that he lost that amount at de-

fendants' place of business. So that the verdict was evidently a compromise, and the result of the court's statement that he would not discharge the jury until they agreed upon a verdict.

This action and instruction of the court is assigned as error. We are clear that it is fatal to the verdict. This was strictly a jury case, depending upon conflicting evidence, and in view of the record before us it is not at all surprising that the jury could not agree. Both parties had the right to a conscientious verdict from the jury, free from undue influence or coercion by the court; and though it is a thoroughly settled practice that the court may, in the exercise of its discretion, where jurors report their inability to agree, urge upon them a further consideration of the case in the hope that an agreement may be reached (Watson v. Minneapolis St. Ry. Co., 53 Minn. 551, 55 N. W. 742; Gibson v. Minneapolis, St. P. & S. S. M. Ry. Co., 55 Minn. 177, 56 N. W. 686, 43 Am. St. 482), it exceeds proper limits in bringing about an agreement by threats of long-continued confinement in the jury room, or other undue or coercive methods. That the jury felt constrained to report a verdict of some kind in this case is quite clear, and that it was produced by the remark of the court that the case was a simple one, and that the jury would not be discharged until they had returned a verdict, is equally clear. Green v. Telfair, 11 How. Pr. (N. Y.) 260, 261; Slater v. Mead, 53 How. Pr. (N. Y.) 57; Brooks v. Barth, 98 Mo. App. 89, 71 S. W. 1098; Twiss v. Lehigh, 61 App. Div. 286, 288, 70 N. Y. Supp. 241; Hagen v. New York, 79 App. Div. 519, 526, 80 N. Y. Supp. 580; Phoenix v. Moog, 81 Ala. 335, 1 South. 108; Hancock v. Elam, 3 Baxt. (Tenn.) 33. For this error a new trial is granted.

Order reversed.