## STATE v. HARDY FRIEND.[1]

February 2, 1923.

No. 23,267.

**Conviction sustained.**

1. In a prosecution for statutory rape the evidence is *held* sufficient to support the verdict of guilty.

**Misconduct of prosecutor not proved.**

2. Certain assignments of error charging misconduct on the part of the prosecuting attorney considered and *held* not well founded.

[1]Reported in 191 N. W. 926.

**Charge to jury not prejudicial to defendant.**

3. Instructions and suggestions of the trial court to the jury in respect to their duty to agree upon a verdict, *held* temperate and judicial in character, in no proper view coercive, or prejudicial to defendant.

After the former appeal reported in 151 Minn. 138, 186 N. W. 241, the case was tried before Meighen, J., and a jury which returned a verdict of guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*H. H. Dunn* and *F. G. Sasse,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *John O. Peterson,* County Attorney, for respondent.

BROWN, C. J.

Defendant was indicted by the grand jury of Freeborn county and thereby charged with carnal knowledge of a female under the age of 18 years. He was put on trial in that county and found guilty. An order denying a new trial was reversed by this court for error in the admission of evidence. 151 Minn. 138, 186 N. W. 241. On the remand of the cause a change of the place of trial to the adjoining county of Mower was granted at defendant's request. After due trial in that county defendant was again convicted, a new trial was denied, and he again appeals.

The assignments of error present the principal questions: (1) Whether the evidence supports the verdict; (2) whether the prosecuting attorney was guilty of prejudicial misconduct on the trial, and (3) whether there was error in the instructions to the jury.

1. The evidence submitted to the jury on the second trial was substantially the same as that on the first, with the exception of two additional alibi witnesses presented by defendant, and a variation in one respect in the testimony of the complaining witness. With these exceptions the record made on each trial is the same. On the former appeal we held the evidence sufficient to justify the

conviction. A re-examination of the record, with the additions referred to, leads to the same conclusion. The evidence, approved by the trial court, is sufficient to justify the verdict. It is unnecessary to discuss it, no useful purpose would be thus served, and we pass that feature of the case without further comment. The suggestion on the argument that complainant was of bad repute, and in fact immoral, has not escaped attention. The fact that she sustained that reputation, or was immoral in fact, constitutes no defense to her further defilement. State v. Bragdon, 136 Minn. 348, 162 N. W. 465.

2. We find no misconduct on the part of the prosecuting attorney of a character to require a new trial, in any of the respects complained of by defendant. The act constituting the alleged misconduct is found in an effort by the county attorney to introduce in evidence a conversation had between complainant and defendant leading up to the unlawful act, and which defendant claims was held inadmissible by this court on the former appeal. The evidence so held inadmissible was a conversation between the parties, testified to by complainant, involving like relations with other girls on other occasions; all of which tended to and was offered for the purpose of showing the commission of similar crimes by defendant with such other girls. The opinion of Mr. Justice Dibell on that appeal is quite clear on the question, and leaves no fair doubt of what the court intended to and did decide. On this trial the prosecuting attorney in calling for the conversation in question took pains to exclude therefrom any reference to transactions with other girls.

There was an extended colloquy on the subject, between the court and counsel, during which the county attorney criticised the former decision of this court, in an effort to induce the trial court to admit the evidence, but that all took place in the absence of the jury. After the court had indicated its ruling in the matter, and the jury had returned to the court room, the county attorney put to the complainant the following questions, by which the objectionable evidence was excluded:

Q. Now, Evelyn, is there any other conversation that you can recollect that took place between yourself and Hardy Friend leading up to the acts which you related took place on the bed. Not including anything that may have been said with reference to any other girl, or anything of that sort.

Defendant's objection to the question was sustained.

Clearly the state may in such cases introduce in evidence in corroboration of the charge matters of inducement offered by defendant by oral speech, or otherwise, to cause submission to his will; and so long as evidence of that character, and limited to that purpose, does not tend in any way to prove like crimes with others, it is admissible. Such was the theory of the state in this instance and in urging it upon the attention of the court there was no error or misconduct. If the original offer on the subject or questions to the witness went too far, the danger of prejudice to defendant was obviated by the prompt ruling of the trial court.

3. It is contended that the court erred in certain supplemental instructions given the jury which it is claimed coerced and brought about the verdict finally returned by the jury. In that we are unable to concur. The jury had been out for some 24 hours and were called into court and in response to an inquiry stated that no agreement had been reached. Whereupon the court further instructed them as follows:

Gentlemen of the jury, you have been out considering this cause for about 15 hours, and have not been able to agree. Of course, I have no means of knowing how you stand or what your trouble is, but I want to say to you that it is very important that a verdict be secured. Litigation is very expensive to the parties, as well as to the county, and the state expects you to do your duty conscientiously and faithfully. I have no right to ask any juror to yield up his conscientious and settled convictions as to the evidence and I do not ask you to do that, but if this jury is being detained from a verdict by any man or any two men, then it is a matter for those in the minority, in view of the fact that the other members of the jury, who are equally as honest, and whose judg-

ment is equally as good, to take a different view of the evidence, to seriously consider whether his or their own judgment might not be mistaken. All business transactions are done upon the theory of listening to and in proper cases yielding to the views of others, if they are sound or reasonably so. In a civil case a jury should approach the solution of the question in that spirit and not the spirit of controversy, and not the spirit of any feeling toward another member of the panel, or as to any of the parties, nor should they allow any outside consideration or motives to have any weight with them except to be governed by the evidence, as it has been detailed to you and the instructions as the court has given them to you. Now, gentlemen, you will retire to your jury room and make an earnest effort to see whether you cannot reconcile your views.

The jury again retired and within half an hour returned a verdict of guilty. The contention that the result was brought about because of the character of the instructions quoted, in effect thus coerced, cannot well be sustained. In our view of the matter the instructions were temperate and judicial in character, quite appropriate in method of advising members of the jury what their duties in the premises were. The learned judge was clear in the expression that he had no right to ask any juror to surrender his convictions, founded upon the evidence as he understood it, but that it was the duty of each to seriously compare their view with those of their fellows, with a view to the removal of any misunderstanding as to the facts of the case. This the court had not only the right to say to the jury, but in fact it was duty and responsibility cast upon it by the orderly administration of the law. We find no objection to the manner the duty was here performed. The case of Mar v. Shew Fan Qui, 108 Minn. 441, 122 N. W. 321, 133 Am. St. 460, is not in point. There the trial court expressly stated to the jury, when called into court, as in the case at bar, that the jury would not be discharged until a verdict was agreed upon; a clear case of coercion.

4. The other assignments of error have been fully considered with the result that no sufficient reason for interference with the verdict appears from the record. The alleged misconduct of a juror was

disposed of by the trial court upon conflicting affidavits, an examination of which furnishes no basis for disapproving the conclusion reached thereon.

Order affirmed.

DIBELL, J. (concurring.)

I concur in the result.

No one questions the legal sufficiency of the evidence to sustain the verdict. The responsibility was with the jury on the first trial and it is now.

On the former trial it was held that the prosecutrix could not testify that at the time of the offense alleged the defendant admitted like acts with other girls under 18 at the same place. It was said that such testimony tended to show independent crimes, was not a part of the res gestae, did not characterize the act under consideration, and that its obvious purpose was to get the claimed commission of other crimes before the jury. It was also held that evidence that other girls under 18 frequented the defendant's place of business, or that he rode about in his auto with them, was incompetent; and that it was not proper to show that his father was a banker and that the family was of wealth.

At this trial the state made constant effort to get before the jury by evidence or suggestion or innuendo much of what was held error before, as well as other objectionable matter. What occurred at the trial is best gathered from a few references to it.

The state made an effort to get before the jury evidence of the prosecutrix as to conversations with the defendant about his relations with other girls apparently held improper on the first trial, and one of the grounds of the reversal. Settled case, pp. 178-180. The court ruled that questions suggesting the existence of such testimony were not competent. The state was insistent upon stating its position while the jury was present. The court discharged the jury pending the statement of the prosecution, carefully informing it of the purpose of the exclusion. What occurred between counsel and the court did not prejudice the jury. It is of importance only as it shows the view assumed and persisted in by the

state in the conduct of the case. The court stated to the prosecution that his understanding of the former opinion was that no conversation showing independent crimes could be received. The prosecution stated:

Well, your Honor, the question of the position of the state is this: That while the court has made a statement there, there seems to be neither reason, sense nor logic for the court making such statement, because I think it is well known to this court that our supreme court has at all times admitted evidence even to show and establish crimes of a similar nature. But that is not the purpose for which we offer the evidence in this case. We simply offer the evidence to corroborate the being there by this witness and things that were told by this defendant which led to the submission by the girl to the defendant. Settled case, p. 181.

There was then a statement at length by the prosecution, mingled with some extraneous matter, that it desired to show such evidence as an inducement. The court again stated that the ruling of the court upon the former appeal was the law of the case, and whether right or wrong was binding upon the court even though this court should take a different view in some other case. A colloquy of some length followed. The prosecution asked whether the evidence would be excluded "even though it is contrary to the other decisions," and received the answer, "I think so." The court said by way of inquiry:

Well, I take it that practically the same evidence was before the supreme court that you are now about to introduce. The answer was yes.

The court then stated to counsel that his questions would go directly to testimony which the supreme court said should not be in the record again. It carefully explained that there might be other conversations not within the supreme court's ruling, but that those asked went directly to it. The prosecution said:

Well, in other words, our supreme court has held that they can pick out those writings which are most favorable to the defendant and leave out those which are unfavorable. This is the effect of

the holding of that decision, if that is the law. I am not dumb but I cannot get any sense or reason or logic to the decision. But I suppose if the court says that it is the law, why, we will have to have it so. Settled case, p. 184.

The jury was recalled. The prosecutrix was asked whether there was a conversation between herself and the defendant leading up to the offense in which other girls were not mentioned. This is the question quoted in the opinion. It emphasized the conversations. It brought before the jury the suggestion of conversations with other girls which could not be narrated to them. It really appears that other important conversations were not expected, and soon it turned out that there were none. The prosecution had before stated to the court that the evidence it proposed proving was that which it was held error to prove on the former trial. It will be noted later that such a thing as an inducement was not in the case. An objection was made. There was no immediate ruling. Other questions were asked, no one was getting anywhere, and this followed:

By the court: If there were conversations not about other persons the witness may answer, yes or not. A. There was not.

Then, on motion of the defendant, the court struck out the question relative to conversations not involving other girls, the one referred to in the opinion, and said this:

The motion to strike out that question is granted and the jury will pay no attention to it, no thought of it, put it out of your mind entirely, because being struck out it is not a part of the record.

The prosecution immediately proposed another question inquiring for any conversation with the defendant not yet narrated, and upon objection being made desisted with this remark:

Well, if you don't want the witness to answer I will withdraw it. Settled case, p. 186.

The prosecution went over the testimony at the former trial with the prosecutrix one evening. This was proper. The next morning she testified to certain things done and conversations had with the

defendant. She was read some of her testimony given at the former trial and stated that she gave it. She was asked:

Q. Whether or not your attention at that time [the night before] was called to any matters you testified to here this morning?

A. No, sir; it was not; the things that were gone over last night were overruled by the court; we were not able to say them.

The answer referred to conversations understood to be inadmissible.

There was renewed effort to get the claimed fact before the jury when the defendant testified; and an effort to show that he had the names of other girls written on the walls, constituting what was termed in the argument before us the defendant's hall of infamy. Settled case, pp. 424, 425. Some other matters may be noted in this connection without special mention. The defendant was asked whether it wasn't a fact "that it became imperative for you to leave Marshalltown about the time you did?" Settled case, p. 446. And about having liquor in his place of business. Settled case, p. 436.

One Latham of Albert Lea, a clerk at the Albert Hotel, gave competent testimony in behalf of the defendant. He was a friend of the defendant and knew the family in Marshalltown. The state sought to show the defendant's father's business. The former opinion shows why. The witness was asked whether he knew that his mother had offered the girl's mother money to settle. An objection was overruled and he answered in the negative. The prosecution then asked whether "after the reversal of the case in the supreme court that your mother came" to the defendant's mother, "and offered settlement, telling her that the Friend people were very rich people." Before a ruling could be had the state volunteered that it was "in position to prove these facts by the mother of the prosecutrix." Settled case, p. 109. The objection to the original question was finally sustained.

One Rice of Albert Lea was a witness for the defendant. The trial was in Mower county and the alleged offense at Albert Lea in Freeborn county. The prosecution, as we gather it from the record, was attacking the testimony of Rice, as of course it might.

His demeanor and bearing and whatever appeared at the trial affecting the credibility or weight of his testimony was proper for comment. In his argument counsel said:

By Mr. Peterson: A man like Rice couldn't have any effect on a jury in Freeborn county.

By Mr. Sasse: We object to the remarks of counsel as not borne out by the record.

By Mr. Peterson: I say—

By Mr. Sasse: Just a moment.

By the Court: Oh, I think it is a legitimate argument to comment upon the witness' appearance had upon the witness stand.

By Mr. Sasse: He says he couldn't have any effect on a jury in Freeborn county. That is the vicious part of it.

By the Court: Well, in so far as the reference has to do with his attitude upon the witness stand and his appearance and his demeanor and the way he conducted himself, his interest or lack of interest, I think it would be proper. Otherwise, it would not be.

By Mr. Peterson: This trial wasn't had in this county because the state wanted it.

By Mr. Sasse: We object to the remarks of counsel as to the trial being here and the reasons for it. The trial is an original hearing and we ask that the jury be instructed to disregard the remarks of counsel.

By the Court: Well, the trial, gentlemen, is brought here by the order of the court in a proper manner. It is a trial where the expenses of it are born by Freeborn county just as though it were tried there, but for proper reasons—it is not necessary for me to detail them all here—it, under the rules of law, was changed to this county. The venue was changed so that it could be tried here; and that shouldn't be considered by you one way or the other in determining the guilt or the innocence of the defendant. You may proceed.

By Mr. Peterson: Well, men, I see it troubled counsel some. Now, if I made a mistake in touching on that part of it, I want to beg the Court's pardon and your pardon, but it does seem to hurt counsel more than anybody else.

By Mr. Sasse: We object to the remarks of counsel as not warranted by the record or the law.

By Mr. Peterson: Well, weren't you making remarks; weren't you stopping me? Do you want to go back on your own statement?

By the Court: Just a moment, Mr. Peterson. The objection was made in a lawyer-like manner and was ruled upon and proceed with your argument and forget about Mr. Sasse. Settled case, pp. 454, 455.

At one time in the argument, the connection not making it very clear, the prosecution spoke of the defendant going about with other girls. Evidence in the record upon which this is based I do not find. Such evidence was held improper before. Counsel for the defendant objected. This followed:

By the Court: The words were, 'what was he doing in Albert Lea so far as this record shows? He was up there hauling little children about' Those are substantially the words.

By Mr. Peterson: I think your Honor should add to that, 'And I am talking to you about nothing else' because that was what my statement contained.

This statement was not stricken by the court and it is so meager that it is impossible to say just what occurred.

Then there was some question about whether the defendant had liquor and as to the fact of his having liquor being shown at the former trial, a question of no importance. Objection was made and the counsel for the defendant asked the court to put the statement of fact in the record.

Then this followed:

By Mr. Peterson: Now, your Honor, it seems to me that I have not—I am not getting a fair chance here—they are simply endeavoring to consume my time. . I say it is unfair. I promise this, that whatever they say I shall not interrupt and it seems to me, your Honor, that they are just using these dirty tactics to consume my time, and it is not fair.

By the Court: I think I shall ask the court reporter to take down the balance of the argument and let the exceptions be made if

counsel for the defense so desires at the close of the argument. You may proceed.

The statement of the opinion that the state took pains to exclude all reference to transactions with other girls is not borne out in my opinion by the record; nor is the statement of the opinion that evidence might be introduced properly, showing inducement causing the submission of the girl to the defendant, founded upon the facts of the record. The state said that its evidence if received would be like that received on the first trial. It really never thought of proving inducements resulting in submission. Counsel knew the record and the girl's testimony. It was not claimed before, never has been claimed, no one claims now, that any inducement or flattery was used. The testimony of the unfortunate girl at the former trial was that whatever conversation about offenses with other girls took place was after the offense, or during its progress; it was not before; and there was never a suggestion that such talk was an inducement to the offense charged. Paper book, pp. 40-42. If the statement was made at all it was a matter of idle or depraved conversation between the two. Conceivably it was made by way of boast; certainly not by way of blandishment.

In the former opinion it did not escape attention that evidence of flattery or blandishment or inducement might in a proper case be offered. If there had been seduction claimed, or bastardy, or even the crime here charged, circumstances might be such that inducement or flattery and the like would have been competent. The criminal act claimed here was without inducement, and prior in point of time to the conversation about other girls. No one in any way connected with the trial claims or has claimed that there was any where evidence of an inducement which a question by the state could elicit.

The attitude of the attorney general is candid to the court as befits his office. He thinks the defendant guilty, and seeks, as he should, to sustain the conviction. To some extent he justifies the prosecution; to some extent he excuses it; and when he does neither, he suggests that there was no bad faith, and no such prejudice,

within rules long established by this court, as should work a reversal contrary to the view of the presiding judge.

In State v. Clark, 114 Minn. 342, 131 N. W. 369, a case in its nature like this, Chief Justice Start, said [at page 344]:

The duties and obligations of a prosecuting officer are not simply those of an attorney in a civil action; for behind him, and largely at his command, are all the forces of organized society. He has by virtue of his office, if worthy of it, great influence with juries, and he should never forget that he is the representative of the sovereignty and justice of the state, and that he must bear himself, in the discharge of his official duties, as a minister of justice, and never as a partisan. He is not bound to make his argument to the jury colorless, or argue both sides of the case, if the defendant is represented by counsel, but he may present forcibly the state's side of the case. He is, however, never justified in thrusting his personality into the case and expressing his opinion that the defendant is guilty, or stating as a fact anything except what the evidence tends to prove, or which he in good faith expects to prove. If he does otherwise, he is guilty of misconduct.

In State v. Quirk, 101 Minn. 334, 112 N. W. 409, and Malone v. Stephenson, 94 Minn. 222, 102 N. W. 372, the same Chief Justice expressed similar views. We have always approved vigorous prosecutions, but have asked prosecuting officers to be lawyerlike and fair. In a recent case, State v. Peterson, 152 Minn. 316, 190 N. W. 345, Mr. Justice Holt, in referring to the conduct of criminal trials, having in mind a situation not nearly so bad as this, said:

It is deplorable that, notwithstanding the many and pointed disapprovals of this court, prosecuting attorneys will persist in browbeating an accused upon cross-examination, and in vicious denunciation to the jury. Fairness to the accused is the attitude of the state. The prosecuting attorney's endeavor should be likewise, since he is the mere representative of the state.

In State v. Dolliver, 150 Minn. 155, 184 N. W. 848, the court, speaking of such a crime as this, and seeking to express the desirability of a fair trial, said:

A man accused of the crime for which defendant was indicted is as good as convicted in the minds of many men even before he is tried.

In State v. Nelson, 148 Minn. 285, 181 N. W. 850, a conviction of murder in the first degree, the court reviewed at length the evidence of independent crimes, the propriety of cross-examination and examination upon collateral matters, the unfair effort to discredit by innuendo and suggestion, and stamped with disapproval conduct not much worse than that before us. The conclusions there announced were seriously reached and intended to state principles of law and not merely a rule applicable to the one case. In the former appeal we stated principles applicable to the case now before us. Of their present soundness there is no question. The trial court ruled substantially in accordance with them. The trouble is not because of the rulings of the court but because of the disregard by counsel of them. Chief Justice Start's standard was not in mind, nor the suggestion of Mr. Justice Holt. This is not charging lack of good faith. It is stating the facts. Counsel was vigorous and interested and went, as counsel sometimes do, beyond proper limits.

The rule of this court is that whether a trial should be granted for misconduct is very largely a matter of discretion with the trial court. Dunnell, Minn. Dig. & Supp. §§ 7101-7103; State v. Morgan, 146 Minn. 197, 178 N. W. 489; State v. Hass, 147 Minn. 269, 180 N. W. 94; State v. Bernstein, 148 Minn. 301, 181 N. W. 947; State v. Townley, 149 Minn. 5, 182 N. W. 773, 17 A. L. R. 253. It is a rule difficult of definite or just application. In this case the presiding judge correctly applied the law and cautioned the jury as occasion arose. He was master of his court. When evidence or a remark was stricken, as often it was, the effect of striking was carefully explained. He could not prevent statements of the prosecuting attorney in advance of their making. His charge was clear and helpful and without exception. His view is that prejudice requiring a new trial has not resulted. After deliberation, though with some hesitation, I defer to his judgment, and yet I would join in granting a new trial until a seemly one were had.

But I cannot concur with the majority view that the state took pains to exclude reference to transactions with other girls, or that there was freedom from improper conduct in that or in other respects, or that there was room for the application of the rule that an inducement by way of the talk about other girls, bringing about submission, could be shown. The prosecutrix never thought to claim it and there was none.