IN THE MATTER OF THE CONDEMNATION OF PROPERTY OF T. GLENN HENDERSON AND WIFE, HAZEL B. HENDERSON, RESPONDENTS, BY THE CITY OF GREENSBORO, PETITIONER

No. 6918SC6

(Filed 26 February 1969)

**Trial § 39— additional instructions — prejudicial error**

    After the jury had been deliberating for five hours and twenty minutes the trial court gave them additional instructions to the effect that he did not know where to find twelve more intelligent jurors than they were. that "intelligent people like you are can get together," but that "an ignorant person stays right to himself, you can't move an ignorant person." Shortly thereafter the jury returned with a question concerning the right of the parties to appeal, and twenty minutes later they returned their verdict. At no time. had the jury informed the judge of an inability to agree. *Held:* The additional instructions were prejudicial in improperly influencing the jury in that (1) the trial judge failed to charge that no juror should surrender his conscientious convictions or his free will and judgment in order to agree upon a verdict and that (2) the jury may well have received the impression that their failure to agree would be a reflection upon their intelligence and integrity.

APPEAL by petitioner City of Greensboro from *Olive, E.J.*, 18 March 1968 Civil Session of Superior Court of GUILFORD County, Greensboro Division.

This is a proceeding for the condemnation of 538.03 acres of a 658.33-acre tract of land of T. Glenn Henderson and wife, Hazel B. Henderson, lying and being in Monroe Township, Guilford County, North Carolina, initiated by the City of Greensboro pursuant to the provisions of Chapter 1137 of the Session Laws of 1959. Appraisers were appointed as provided by law and appraised the value of the condemned land to be $112,500. The appraisal figure was approved, and the respondent landowners appealed as provided by law to the Superior Court.

Upon trial in the Superior Court, only the issue of damages was submitted to the jury. The jury answered the issue in the sum of $242,100. Upon the entry of judgment on the verdict, the petitioner City of Greensboro appealed, assigning error.

*Jesse L. Warren, and Cooke & Cooke by William Owen Cooke for petitioner City of Greensboro, appellant.*

*Shreve & Carrington by Clyde Shreve, and Cahoon & Swisher by Robert S. Cahoon for respondents, appellees.*

MALLARD, C.J.

The only assignment of error brought forward in the petitioner appellant's brief is based on exception to the supplementary instructions given by the court to the jury in urging them to reach a verdict. Such instructions, given after the jury has begun its deliberations, are sometimes referred to as supplementary instructions, additional instructions, and verdict-urging instructions.

In this case the evidence with respect to damages varied widely. Respondents' evidence tended to show that the lands of respondents had been damaged by the taking in a sum from $371,682 to $574,330. Petitioner's evidence tended to show that the lands of respondents had been damaged by the taking in a sum from $103,500 to $112,500.

The record reveals that the judge finished charging the jury and the jury began its deliberations on Thursday, 21 March 1968, at 12:05 p.m. At 12:40 p.m. the jurors were permitted to separate and go to lunch. At 2:00 p.m. the jurors resumed their deliberations and continued until 5:20 p.m. when they were excused and permitted to separate to return at 9:30 a.m. on Friday, 22 March 1968. At 9:30 a.m. on Friday all the jurors, as directed, returned to the jury room to continue their deliberations. At 10:55 a.m. the jurors returned to the courtroom. At this time the jury had been in their room deliberating for a total of five hours and twenty minutes. The record is silent as to whether they returned of their own accord or whether the judge sent for them. Upon their return, the judge gave the instructions complained of, as follows:

> "As I understand it, ladies and gentlemen of this jury, you haven't agreed, but I just wanted to say to you that you haven't been out too long. We have got plenty of time. Don't rush. Just take your time. I've held you (sic) in your County right much and I don't know where we're going to get twelve — I've seen a lot of jurors — I don't know where we're going to get twelve

more intelligent jurors than you are. Of course, intelligent people can get together, they can see what the other person says and get their views and they can get together on their views; but, of course, an ignorant person stays right to himself, you can't move an ignorant person, but intelligent people like you are can get together. So you've got plenty of time and you just take your time and go on back to your jury room and take your time and when you arrive at a verdict bring it into court."

The jurors retired from the courtroom and returned at 11:40 a.m. and asked the court if either party had the right to appeal. The judge, without exception thereto, instructed the jury, in substance, that such a question did not concern them at all. Whereupon, the jurors retired from the courtroom and returned at 12:00 noon with the verdict of $242,100.

Our research indicates that the principles or considerations governing the propriety or impropriety of additional instructions which have as their purpose the urging of the jury to reach a verdict appear to be essentially the same in the trial of civil cases as in the trial of criminal cases. 109 A.L.R. 72.

Counsel have not cited, and in our research we have not found, a case in this or any other jurisdiction in which the trial judge used words similar to those used in the instructions complained of here.

In *Trantham v. Furniture Co.,* 194 N.C. 615, 140 S.E. 300, the Supreme Court said:

"The verdict of a jury is sacred. It should represent the concurring judgment, reason and intelligence of the entire jury, free from outside influence from any source whatever. The trial judges have no right to coerce verdicts or in any manner, either directly or indirectly, intimidate a jury."

In the case of *State v. McKissick,* 268 N.C. 411, 150 S.E. 2d 767, Chief Justice Parker, after quoting from *Trantham v. Furniture Co., supra; State v. Barnes,* 243 N.C. 174, 90 S.E. 2d 321; *State v. Green,* 246 N.C. 717, 100 S.E. 2d 52; and *In Re Will of Hall,* 252 N.C. 70, 113 S.E. 2d 1, said:

"The instruction in the *Barnes* case, the instruction in the *Green* case, and the instruction in the case of *In Re Will of Hall* were each to the effect that *no juror should surrender his conscientious conviction in order to agree on a verdict.* The challenged instruction in the instant case begins in the second sentence with the words, 'You must consider this case until we have exhausted

every possibility of an agreement,' *and fails to instruct the jury that no one of them should surrender his conscientious convictions or his free will and judgment in order to agree upon a verdict.* The challenged instruction might reasonably be construed by a minority of the jury as coercive, suggesting to them that they should surrender their well-founded convictions conscientiously held or their own free will and judgment in deference to the views of the majority, and concur in what really is a majority, rather than a unanimous, verdict." (emphasis added)

The Supreme Court of New Jersey said in the case of *In Re Stern,* 11 N.J. 584, 95 A. 2d 593 (1953):

"The design of a jury trial is a determination of the facts in keeping with legal principles; yet that determination can rest only on the conscientious convictions of the individual jurors comprising the number sufficient for a verdict, based on the evidence and the law as expounded by the judge. The instruction in question depends not upon the motive of the judge, laudable as it may have been; it is assessed by the natural sense and significance of the words used. It was within the discretionary province of the judge to allude to all the factors making agreement desirable, including the expense attendant upon a retrial; but such an instruction is fundamentally deficient unless the jurors be told that none should surrender his conscientious scruples or personal convictions to that end."

In the case under consideration the trial judge failed to include in the supplementary instructions to the jury that none of them should surrender his conscientious convictions or his free will and judgment in order to agree upon a verdict.

It is common knowledge that jurors are easily influenced by the words and actions of the judge presiding at the trial. Although the time of giving instructions does not make them prejudicial, the time and circumstances under which instructions are given may tend to emphasize the words of the court. The trial judge therefore should, in giving additional instructions to the jury urging a verdict, state in plain, clear, and concise language that he is not expressing an opinion as to what their verdict should be and also that he does not mean to infer that any of them should surrender his conscientious convictions or his free will and judgment in order to agree upon a verdict. *State v. McKissick, supra.*

In this case the able and experienced trial judge inadvertently, by the challenged instruction, may well have left the impression with the jury that if they did not agree upon a verdict, they were ignorant.

The rule is stated in 53 Am. Jur., Trial, § 961:

> "Comments or remarks of the trial judge reflecting upon the honesty, integrity, or *intelligence* of the jurors in case of failure to agree are not permissible." (emphasis added)

In the case of *Kesley v. United States,* 47 F. 2d 453, it is said:

> "But comments, not upon the evidence, but reflecting on the jurors, are not permissible. *People v. Sheldon, supra; Hagen v. N. Y. Central R. R.,* 79 App. Div. 519, 80 N.Y.S. 580. In *State v. Bybee,* 17 Kan. 462, Justice Brewer said: 'No juror should be induced to agree to a verdict by a fear that a failure so to agree will be regarded by the public as reflecting upon either his intelligence, or his integrity. Personal considerations should not influence his conclusions; and the thought of them should never be presented to him as a motive for action.' Because of the imputation of stubbornness, or worse, which is likely to arise if the numerical division of the jury is publicly revealed, to require disclosure of it is held error per se in the courts of the United States. *Brasfield v. United States,* 272 U.S. 448, 47 S. Ct. 135, 71 L. Ed. 345."

> See annotation in 85 A.L.R. 1447, entitled "Statements reflecting on integrity of jurors." See also annotations in 19 A.L.R. 2d 1257 and 109 A.L.R. 72, entitled "Coercive effect of verdict — urging by judge in civil case."

Personal considerations should never be permitted to influence the decisions of a juror. Nothing should be said by the trial judge in urging the jury to agree, which could reasonably be interpreted to mean or infer that a failure to do so would in any way tend to reflect upon their honesty, integrity, or intelligence.

Respondents' contend in this case that the petitioner has failed to show prejudicial error. We think that prejudice is shown when the words of the trial judge tend to coerce or improperly influence the jury to such an extent that such words deprive the jury of their freedom of action. We think that the words used by the trial judge in this case improperly influenced the jury to such an extent that they were deprived of their freedom of action. It should be noted that when the instructions complained of were given, the jury had not informed the judge of an inability to agree and that shortly thereafter they returned with the question concerning the right to appeal, and twenty minutes later returned their verdict.

Respondents contend that the case of *Kanoy v. Hinshaw,* 273 N.C. 418, 160 S.E. 2d 296, is in point and controlling. We do not

agree. The *Kanoy* case is distinguishable. There the contention was that the court erred "in the time when and manner in which the trial judge submitted the case to the jury." After the jury had deliberated for some time, the court at 7:40 p.m. asked the jury if they wanted to come back that night and continue their deliberations. The judge was asked by the ".jury" if they did not agree how long would they have to stay, and the judge replied:

"You have to stay until you indicate to the Court that you are hopelessly deadlocked. A verdict of the Jury is a unanimous verdict of 12 people reasoning together and not a verdict of six or of eleven, but a verdict of twelve reasoning together and unanimous. If you can't reach a verdict, it will be necessary for the Court to withdraw a juror and declare a mistrial and try these cases all over again; the next Jury will have about the same evidence and same law and won't be any more intelligent that you are and it will have to be done all over again."

Justice Branch in writing the opinion said:

"Without indicating any opinion as to the weight of the evidence or what the verdict should be, the trial judge courteously and considerately reminded the jury of its duty and of the result if it failed to reach a unanimous verdict. The record fails to show that the verdict was coerced or that the jury was intimidated by the actions or words of the trial judge."

In the *Kanoy* case there was nothing said that would in any way reflect upon the honesty, integrity, or intelligence of the jurors in case of a failure to agree. We think this distinguishes the *Kanoy* case from the case under consideration.

In the challenged instructions the judge appeared to be flattering the jurors by telling them that "intelligent people like you are can get together." However, he had just told them, "of course, an ignorant person stays right to himself, you can't move an ignorant person." The vice in the instruction complained of is that the jury may well have received the impression from what the judge said that a failure upon their part to agree was a reflection upon their intelligence and integrity. We also think, under the circumstances, that the jury received the impression that if they did not agree upon a verdict they would prove that the judge's appraisal of them as being intelligent people would be wrong and that they would fit the description stated by the judge of being ignorant people who could not be moved. In the case of *State v. Overman*, 269 N.C. 453, 153 S.E. 2d 44, Justice Lake said:

"Of course, the judge should leave the jury 'free and untrammeled to find the facts,' but the test of this is whether '[t]he language of the court addressed to the jury was * * * subversive of that freedom of thought and of action so very essential to a calm, fair, and impartial consideration of the case.' *State v. Windley*, 178 N.C. 670, 673, 100 S.E. 116."

In our opinion, and we so hold, the instruction complained of tended to and did have the effect of improperly influencing the jury and deprived them of their freedom of thought and of action and that this was prejudicial error, requiring a

New trial.

BRITT and PARKER, JJ., concur.